Francis G. Fleming, 004375
ffleming@kreindler.com
Robert J. Spragg
rspragg@kreindler.com
KREINDLER & KREINDLER LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel.: (212) 687-8181
Fax: (212) 972-9432

Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Tel: (602) 792-1700
Fax: (602) 792-1710

Attorneys for Plaintiff Linda Ann Baillie

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

---

| | |
|---|---|
| LINDA ANN BAILLIE, individually, as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, and on behalf of all heirs and next of kin of<br><br>JAMES DONALD BAILLIE, II, deceased,<br><br>      Plaintiff,<br><br>  v.<br><br>MEDAIRE, INC., STEVEN JOE REINHART, D.O., JESSICA MONAS, M.D., RATAN K. VERMA, M.D. and BRITISH AIRWAYS, PLC,<br><br>      Defendants. | Case No.: 2:14-CV-00420-DGC<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BRITISH AIRWAYS PLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS** |

Plaintiff Linda Ann Baillie, by her attorneys, respectfully submits this opposition to defendant British Airways PLC's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Stay Proceedings Pending Resolution of First-Filed Action, which defendants MedAire, Inc., Steven Joe Reinhart, D.O. and Jessica Monas, M.D. have joined with respect to the request for a stay.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

    1. British Airways and MedAire ................................................................................. 2

    2. Flight 289 and Mr. Baillie's Death ......................................................................... 2

    3. Procedural History .................................................................................................. 5

ARGUMENT ....................................................................................................................... 9

    1. Plaintiff timely initiated a suit against MedAire, Dr. Reinhart, Dr. Monas and Dr. Verma, against whom personal jurisdiction cannot be obtained in California ............ 9

    2. This Court Should Not and Need Not Apply the "First-to-File" Rule in This Case .. 10

        A.   Because the parties and issues in the two actions are not sufficiently similar, application of the first-to-file rule here is not appropriate ........... 11

        B.   The balance of convenience weighs in favor of allowing the Arizona action to proceed ....................................................................................... 12

CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128 (S.D.N.Y.1994) ..... 13

*Air France v. Saks,* 470 U.S. 392 (1985) ...................................................................... 6

*Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622 (9th Cir. 1991) ................ 10, 11

*British Telecommunications PLC v. McDonnell Douglas Corp.*, 1993 WL 149860, *5
   (N.D.Cal. May 5, 1993) ............................................................................................ 11

*Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997) ........................... 10

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180 (1952) ........................ 11

*Med–Tec Iowa, Inc. v. Nomos Corp.,* 76 F.Supp.2d 962 (N.D.Iowa 1999) ................. 13

*Pacesetter Systems, Inc. v. Meltronic, Inc.,* 678 F.2d 93 (9th Cir. 1982) .................... 11

*Ward v. Follett Corp.,* 158 F.R.D. 645 (N.D.Cal.1994) .............................................. 12

**Statutes**

28 U.S.C. § 1404(a) ...................................................................................................... 13

**Rules**

Federal Rules of Civil Procedure 19 ............................................................................. 11

Federal Rules of Civil Procedure 20 ............................................................................. 11

**Treaties**

Convention for the Unification of Certain Rules for International Carriage by Air,
   done at Montreal on May 28, 1999 (entered into force on November 4, 2003),
   S. Treaty Doc. 106-45, codified at 49 U.S.C. § 40105 note 3 ............................ 6, 8, 12

# INTRODUCTION

Plaintiff Linda Ann Baillie hereby opposes defendant British Airways PLC's ("British Airways") Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Proceedings Pending Resolution of First-Filed Action, which defendants MedAire, Inc. ("MedAire"), Steven Joe Reinhart, D.O. ("Dr. Reinhart") and Jessica Monas, M.D. ("Dr. Monas") have joined with respect to the request for a stay.

Plaintiff commenced a suit against British Airways in the United States District Court for the Central District of California on June 27, 2013. Following production of materials from British Airways that revealed colorable claims against additional parties, plaintiff initiated a second suit against those additional defendants, MedAire, Dr. Reinhart, Dr. Monas and Dr. Ratan K. Verma ("Dr. Verma"), as well as British Airways, in Arizona Superior Court on January 30, 2014.[1]  She did so because the four additional defendants are not subject to personal jurisdiction in California and because all five parties are necessary to fully adjudicate her claims in this case.

For the reasons described more fully herein, plaintiff respectfully requests that this Court deny the motion to dismiss or stay this proceeding. The parties and issues in the two suits are insufficiently similar for application of the first-to-file in this case. Further, even were the first-to-file rule to be available here, a dismissal or a stay would unduly prejudice plaintiff's ability to fully litigate her claims against the defendants and equity therefore weighs in favor of allowing the Arizona action to proceed.

# STATEMENT OF FACTS

On March 23, 2012, James Donald Baillie, II ("Mr. Baillie"), a citizen and resident of Maricopa County and the State of Arizona, was traveling on British Airways Flight 289 from London, England to his home in Phoenix, Arizona. *See* Exhibit D to Defendant British Airways' Motion, Plaintiff's Arizona State Court Complaint, ("Arizona Complaint") at ¶¶ 1, 9. Immediately prior to and during the course of Flight 289, Mr. Baillie experienced chest pains and other signs of a heart attack. *Id.* at 9. British Airways failed, however, to adequately respond to Mr. Baillie's medical emergency and, in part on

---

[1] British Airways removed that state action to this Court on March 11, 2014.

1

the basis of information provided by MedAire and its physicians, proceeded to make decisions that caused Mr. Baillie's condition to unnecessarily worsen, ultimately resulting in his death. *Id.* at ¶¶ 15-21.

### 1. British Airways and MedAire

British Airways and MedAire have a contractual arrangement by which MedAire provides "medical advice and support" through its doctors to British Airways crew members "during medical incidents." *See* Exhibit 1 to Declaration of Francis G. Fleming ("Fleming Decl."), British Airways Cabin Crew Manual ("BA Manual") at BA 0385-386. British Airways pays an annual subscription to MedAire, an Arizona-based company, and MedAire provides its "MedLink" services with no additional fees charged to the airline. *Id.* Under the terms of the agreement, MedAire's physicians are available "24 hours a day" to give "advice and instruction" to the airline's crews during medical incidents. *Id.* MedLink's doctors are "familiar with the flight environment" and work "to protocols and guidelines agreed with British Airways and have details of all medical equipment carried on board." *Id.* MedLink also makes all "ground arrangements" for medical treatment of a passenger should "an aircraft need[] to be diverted." *Id.*

An additional service MedAire provides to British Airways is called "MedLink Gate Clearance." *Id.* MedLink Gate Clearance is available for use by any of the airline's ground staff or cabin crew "who need advice on a passenger's health situation or fitness to fly" prior to takeoff.

Under the terms of the agreement between British Airways and MedAire, "MedLink assumes legal liability for medical incidents in which they are involved, so long as their advice is followed." *Id.*

### 2. Flight 289 and Mr. Baillie's Death

Mr. Baillie, who had no prior history of heart problems, arrived at British Airways Flight 289 on March 12, 2012 feeling short of breath and experiencing discomfort in the center of his chest. *See* Exhibit 2 to Fleming Decl., Declaration of Linda Ann Baillie ("Baillie Decl.") at ¶¶ 8-10. After he boarded the airplane, feeling chest pains, Mr. Baillie alerted a flight attendant to his status, explaining that he wasn't sure he should be on the flight. *Id.* at ¶ 11. Nevertheless, the cabin crew closed the aircraft doors, leaving Mr.

2

Baillie with a sense of imminent doom. *Id*. at ¶15. Remembering advice about what to do if one feels one is having a heart attack, Mr. Baillie took asprin. *Id*. at ¶16.

Without consulting MedLink and without any determination as to whether Mr. Baillie was medically fit to fly, the flight crew taxied to the runway and took off. *See* Exhibit 3 to Fleming Decl., Transcript of MedAire consultation calls ("MedAire Transcript") (showing first call took place mid-flight). Both prior to takeoff and during the initial portion of Flight 289, Mr. Baillie continued to feel chest pains, which got worse after the aircraft took off, and continued to notify the British Airways flight crew of this. *See* Fleming Decl., Exh. 2, Baillie Decl. at ¶¶ 11-14. Mr. Baillie was hot, looked pale and was having difficulty breathing. *See* Exhibit 4 to Fleming Decl., British Airways Occupational Safety Report ("BA Report"). His pulse was irregular and he appeared "confused." *Id.* Over an hour into the flight, and with approximately 9 hours and 30 minutes to go, Mr. Baillie again told a British Airways flight attendant that he was experiencing chest pain. *See* Exhibit 5 to Fleming Decl., Declaration of Flight Attendant Ewa Van Den Berg ("Van Den Berg Decl.") at ¶ 21. In light of his condition, the flight crew gave Mr. Baillie supplemental oxygen, but did nothing else. *Id.* at ¶ 23; *see also* Fleming Decl., Exh. 3, MedAire Transcript.

Approximately three hours into the flight, the British Airways flight crew first contacted MedAire. *See* Fleming Decl., Exh. 3, MedAire Transcript. The British Airways pilot told the MedAire representative that "we've got a 61 year old male … who was a little out of breath when he boarded," "has pain in the central chest and feels hot and … is a bit pale," and "we've put him on therapeutic oxygen." *Id.* A short time later, a MedAire physician named Dr. Reinhart joined the call, which lasted only a few minutes. *Id.* Dr. Reinhart advised the crew to continue with the supplemental oxygen and to try to find a physician on board who could take Mr. Baillie's vital signs. *Id.* Dr. Reinhart advised the crew to contact him with the vital signs information at which point he would determine whether Mr. Baillie was stable enough for a dose of nitroglycerin. *Id.*

Approximately twenty minutes later, the British Airways flight crew again contacted MedAire and was again connected with Dr. Reinhart. *Id.* Dr. Reinhart

3

confirmed that he understood that there was a physician on board the flight.[2] *Id.* Dr. Reinhart was told that Mr. Baillie had "crackles" on the left side of his chest (a consequence of fluid buildup in the lungs and a sign of heart failure). *Id.* After hearing Mr. Baillie's vital signs, Dr. Reinhart determined that his blood pressure was too low for nitroglycerin and recommended that the flight crew simply continue to provide him with supplemental oxygen. *Id.* Because six hours remained in the flight, Dr. Reinhart advised the crew to contact MedAire again if Mr. Baillie's condition deteriorated, giving them signs to watch for, and noted that if the situation worsened they would have to consider a flight diversion. *Id.*

Approximately three hours and ten minutes later, the British Airways flight crew again contacted MedAire and briefed a different customer service representative on Mr. Baillie's condition. *Id.* The MedAire representative told the British Airways flight attendant that Dr. Reinhart's work shift was over and that a new physician would have to be updated. *Id.* Shortly thereafter, the new MedAire physician, Dr. Monas, joined the call. *Id.* The flight attendant provided Mr. Baillie's vital signs and told Dr. Monas that Mr. Baillie had taken aspirin seven hours previously but had been given no other medication; that he was complaining about pain in the center of his chest; that he said he was feeling worse; and that the on-board physician described him as looking "considerably worse." *Id.* Dr. Monas recommended that Mr. Baillie be given a single dose of nitroglycerin. *Id.* The pilot then explained that Dr. Reinhart had advised against doing so and had suggested that the flight might need to make a diversion, but agreed to administer the nitroglycerin and to check back with MedAire after doing so. *Id.*

Ten minutes later, the flight crew contacted MedAire again and told Dr. Monas that the physician on board the flight, Dr. Verma, did not want to administer the nitroglycerin to Mr. Baillie because his blood pressure was too low. *Id.* Dr. Monas then asked to be rebriefed on Mr. Baillie's medical condition and the flight crew told her that his blood pressure was 100/80, he had a pulse of 110, he was sweating and short of breath and that he still was experiencing chest pains. *Id.* Based on this information, Dr. Monas told the

---

[2] The on-board physician was Dr. Verma, who is a resident of the United Kingdom.

4

British Airways crew that if they felt that Mr. Baillie was not looking well then they could start to look for diversion airports. *Id.* She also decided to "hold off on the nitroglycerin." *Id.*

Shortly thereafter, a representative from British Airways Operations Control was brought into the call and the pilot told her that there was a possibility of a diversion, that the nearest airport was Chicago, that they were going to get an update from the on-board physician in ten minutes and that they would contact her if they decided that they had to divert. *Id.* At this point, Dr. Monas asked the flight crew to make sure that Mr. Baillie was lying down with his legs elevated. *Id.* The pilot acknowledged Dr. Monas and told Operations Control that he'd update them within ten or fifteen minutes and if and when a decision was made regarding diversion. *Id.* The pilot did not provide any further updates to MedAire. *Id.*

The British Airways pilots did not divert the flight and continued to Phoenix Sky Harbor International Airport where they arrived at the gate, approximately 10 hours 41 minutes after departing the gate at London Heathrow Airport.

By the time the flight arrived in Phoenix, Mr. Baillie's medical condition was very serious. *See* Fleming Decl., Exh. 2, Baillie Decl. at ¶ 22. He was taken directly from the airplane by ambulance to the emergency room at St. Luke's Medical Center in Phoenix. *Id.; see also* Exhibit 6 to Fleming Decl., St. Luke's Medical Center Hospital Records ("St. Luke's Records"), p. 12284. Mr. Baillie was diagnosed as having suffered an acute myocardial infarction (heart attack) as well as acute respiratory failure, cardiogenic shock and acute systolic heart failure. *Id.* He was admitted to St. Luke's Medical Center from the emergency room in critical condition and was then treated in the intensive care unit at St. Luke's Hospital until March 30, 2012, when he was transferred in guarded condition to The Mayo Clinic in Phoenix. *Id.*, p. 12293; *see also* Fleming Decl., Exh. 2, Baillie Decl., ¶¶ 22-24. He remained hospitalized at The Mayo Clinic until his death on July 1, 2012. *See* Fleming Decl., Exh. 2, Baillie Decl., ¶¶ 23-25.

### 3. Procedural History

Not knowing MedAire's correct name, nor of the MedAire-British Airways contract or the details of any of the services MedAire had provided during Flight 289,

5

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BRITISH AIRWAYS PLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

plaintiff, Mr. Baillie's widow and executor of his estate, commenced an action against British Airways in the Central District of California on June 27, 2013, citing the Montreal Convention as the basis for the court's subject matter jurisdiction. *See* Exhibit 7 to Fleming Decl. (California Complaint) at ¶ 6.  The Montreal Convention would hold British Airways liable for damages if Mr. Baillie suffered an "accident" "on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 (entered into force on November 4, 2003), S. Treaty Doc. 106-45, codified at 49 U.S.C. § 40105 note 3 ("Montreal Convention.") [3]  Plaintiff alleged that failure to properly treat Mr. Baillie and the decision not to divert the aircraft to a place where Mr. Baillie could receive medical attention unnecessarily caused his condition to worsen and led to his death, constituting an "accident" for purposes of the Montreal Convention. *See* Fleming Decl., Exh. 7, California Complaint at ¶¶ 14-17.

British Airways answered that complaint on October 4, 2013. *See* Exhibit B to Defendant British Airways' Motion.  Nowhere in that answer did British Airways disclose the role of MedAire or MedAire's physicians in addressing Mr. Baillie's medical crisis during the course of Flight 289. *See id.*

British Airways served its initial disclosures on plaintiff on October 29, 2013. *See* Exhibit 8 to Fleming Decl., British Airways Initial Disclosures.  In that document, British Airways included the names of 11 individual medical providers involved in Mr. Baillie's treatment both during and after Flight 289. *Id.*  Although British Airways identified Dr. Verma, neither Dr. Reinhart nor Dr. Monas was included in that initial disclosure. *Id.*

On November 15, 2013, British Airways responded to plaintiff's first request for production of documents, including her demand for "[a]ll transcripts or recordings of any communication between the flight crew of the subject flight and any ground-based medical consulting services provider regarding" Mr. Baillie's medical emergency. *See*

---

[3] Under Supreme Court caselaw, for purposes of the Montreal Convention, a covered "accident" is an incident that is "an unexpected or unusual event or happening that is external to the passenger" and not "the passenger's own internal reaction to the usual, normal and expected operation of the aircraft." *Air France v. Saks,* 470 U.S. 392, 405-06 (1985).

6

Exhibit 9 to Fleming Decl., British Airways' 11/15/2013 Response to Plaintiff's First Request for Production of Documents and Things. In answering plaintiff's demands, British Airways provided a document that set forth a brief description of a subscription that British Airways had with MedAire. *See* Fleming Decl., Exh. 1, BA Manual. Following this disclosure, plaintiff asked British Airways if it was "blaming MedAire or MedLink" for Mr. Baillie's death and, if so, whether British Airways would "oppose joinder of MedAire/MedLink in this litigation and/or consolidations with a separate litigation against MedAire/MedLink." *See* Exhibit 10 to Fleming Decl., 12/4/2004 Letter, p. 6. Plaintiff expressly stated that she was "contemplating suing MedAire." *Id.*

Plaintiff also contacted MedAire, seeking to depose its physicians. *See* Exhibit 11 to Fleming Decl., 12/5/2013 Email. She simultaneously issued a Notice of Deposition to take the testimony of a MedAire employee that had the most knowledge regarding its relationship with British Airways and the events during Flight 289. *See* Exhibit 12 to Fleming Decl., 12/5/2013 Notice of Deposition.

Three days later, plaintiff advised British Airways that it was "more certain" that she would name MedAire as a defendant in this case, and would be likely to sue MedAire in Arizona. *See* Exhibit 13 to Fleming Decl., 12/9/2013 Email. Thereafter, during attempts to schedule British Airways' employee depositions, plaintiff noted that British Airways' first document production included "evidence [of] an indemnity agreement between BA and a company called MedAire, Inc., with offices and apparently physicians located in Phoenix, AZ. with which the BA crew had contact about Mr. Baillie's life threatening condition during the flight" and that this agreement might make it "therefore necessary to sue MedAire, Inc." *See* Exhibit 14 to Fleming Decl., 12/19/2013 – 12/27/2013 Emails. Plaintiff soon after corrected British Airways' assertion that she had "knowledge of MedAire's potential involvement in the proceedings since the start of the litigation," explaining that she had first learned "from the materials produced by [British Airways] pursuant to the plaintiffs' document requests that BA … had an indemnity agreement with an Arizona business called MedAire, Inc. which BA crewmembers 'patched' in during the flight to obtain medical input about Mr. Baillie's medical condition and recognized that the failure to treat or divert may have been the fault of

7

Medaire [sic] rather than BA." *See* Fleming Decl., Exh. 14, 12/19/2013 – 12/2/2013 Emails.

Then, in a document that British Airways produced on January 9, 2014, plaintiff for the first time saw a transcription of the communications between MedAire's employees and physicians and the British Airways flight crew concerning Mr. Baillie's medical condition. *See* Exhibit Fleming Decl., Exh. 3, MedAire Transcript. This document included the proper names of the MedAire physicians who communicated with British Airways about Mr. Baillie's medical emergency, as well as the content of those communications. *Id.*

Three weeks later, on January 30, 2014, armed with the fact that an agreement existed between British Airways and MedAire concerning in-flight medical advice and opinions; evidence of the communications between the Flight 289 crew and MedAire's physicians concerning Mr. Baillie; the nature of those communications; and the identities of the MedAire physicians providing medical advice and opinions concerning Mr. Baillie, plaintiff filed suit against MedAire, Dr. Reinhart, Dr. Monas and Dr. Verma in Arizona Superior Court in Maricopa County. She filed in Arizona state court because she is a citizen and resident of the state; MedAire, a Nevada corporation, was doing substantial business in Arizona and maintained an office in Arizona; both Dr. Reinhart and Dr. Monas were citizens and residents of Maricopa County; and Arizona's long-arm statute would enable her to obtain jurisdiction over Dr. Verma.

Plaintiff also attempted to obtain a copy of the contract governing the medical advice services provided by MedAire to the crew of Flight 289 on March 23, 2014. She asked British Airways to produce a copy of its contract with MedAire, but the airline refused to do so, claiming that it did "not understand how contract claims could be relevant to your case against [British Airways.]" *See* Exhibit 15 to Fleming Decl., 2/4/2014 Email.

On March 3, 2014, British Airways removed this action to federal court on the basis of federal question jurisdiction, asserting that plaintiff's exclusive remedy is provided for by the Montreal Convention, a treaty of the United States. After removing this case to the United States District Court for the District of Arizona, British Airways

8

moved to dismiss or, in the alternative, stay proceedings. MedAire, Dr. Reinhart and Dr. Monas have joined in that motion only insofar as seeking that this Court issue a stay.

## ARGUMENT

**1. Plaintiff timely initiated a suit against MedAire, Dr. Reinhart, Dr. Monas and Dr. Verma, against whom personal jurisdiction cannot be obtained in California**

Prior to November 18, 2013, plaintiff did not know that an indemnity agreement existed between British Airways and MedAire nor did she know the details of the arrangement for MedAire's provision of medical advice and opinions during the course of Mr. Baillie's flight. Promptly after obtaining this information of that arrangement, plaintiff sought additional information as to MedAire's role in the treatment – or lack of treatment – of Mr. Baillie as he suffered his heart attack while on Flight 289. Instead of hastily pursuing every entity or individual whose name appeared in British Airways' initial disclosures, plaintiff gathered additional information about MedAire and its physicians sufficient to warrant suing four additional parties: MedAire, Dr. Reinhart and Dr. Monas, all of whom contributed to the medical advice and opinions provided to British Airways flight crew concerning Mr. Baillie's worsening condition over the course of Flight 289, as well as Dr. Verma, the on-board physician who assisted the British Airways crew with Mr. Baillie.

Just over two months after first learning that MedAire had an indemnity agreement with British Airways and less than one month after learning the identities of the MedAire physicians that offered medical advice to the crew on Flight 289, as well as learning what that advice was, plaintiff determined that she had a colorable cause of action against the MedAire parties and filed suit against them.

Because Dr. Reinhart and Dr. Monas were residents and citizens of Maricopa County with no known connection to California, because Dr. Verma was a resident of the United Kingdom with no known connection to California, because MedAire had its principal place of business in Maricopa County and because none of the new defendants had any known relationship with California, plaintiff initiated suit against them in Arizona state court in Maricopa County, which is also her state and county of citizenship and

9

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BRITISH AIRWAYS PLC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS

residence.

Given the overlapping nature of the facts underlying the claims against British Airways and MedAire, Dr. Reinhart, Dr. Monas and Dr. Verma, plaintiff also named British Airways as a defendant in the Arizona suit. British Airways conducts substantial business in the State of Arizona and has raised no personal jurisdiction defense to the instant suit.

### 2.   This Court Should Not and Need Not Apply the "First-to-File" Rule in This Case

The "first-to-file" rule is a discretionary doctrine that may be applied when two actions involving the same parties are pending in federal courts of concurrent jurisdiction. *Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997). "Under that rule, when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Id.*[4] The Ninth Circuit has noted that application of the first-to-file rule constitutes reversible error when the two actions involve different issues or different parties. *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 628 n.13 (9th Cir. 1991)("if the issues or parties involved were not the same, adherence to the first-to-file rule would be reversible error for it *would* constitute a misapplication of the law")(emphasis in original).

Even, however, if the issues and parties in the two actions are the same, district court judges can dispense with the first-filed principle for reasons of equity. *Id.* at 628. As the Supreme Court has held, the "first filed" rule is not one of rigid construction; rather:

> Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts ...."

---

[4] The moving defendants omitted transfer as an option under the first-to-file rule, suggesting – incorrectly – that the second court may only "dismiss or stay" an action. *See* British Airways Motion, p. 4 (stating "the first filed rule gives the court discretion to dismiss or stay a duplicative action[.]")

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183-84 (1952) (approving of dismissal of a complaint that first acquired jurisdiction where the second litigation would best resolve all of the issues); *see also Pacesetter Systems, Inc. v. Meltronic, Inc.,* 678 F.2d 93, 95 (9th Cir. 1982)("[the] 'first filed' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration.")

### A. Because the parties and issues in the two actions are not sufficiently similar, application of the first-to-file rule here is not appropriate

In determining whether the first-to-file rule can apply – as opposed to whether it should apply – a court must consider the (1) chronology of the two actions; (2) similarity of the parties; and (3) similarity of the issues. *Alltrade*, 946 F.2d at 625. Here, though the California action was chronologically first, there is not sufficient similarity of the parties or the issues to warrant application of the first-to-file rule.

Plaintiff has sued only British Airways in the California action. She has not brought MedAire, Dr. Reinhart, Dr. Monas or Dr. Verma in as defendants in that action because those four are not subject to personal jurisdiction in California. These four new parties are critical to her overall claims regarding the events during the course of Flight 289 that caused Mr. Baillie's medical condition to deteriorate, as it was MedAire, Dr. Reinhart and Dr. Monas who were actively advising the British Airways flight crew as to Mr. Baillie's medical condition and how to treat it and Dr. Verma who was actively assisting the British Airways crew with Mr. Baillie. Further, insofar as an indemnity agreement exists between MedAire and British Airways, the air carrier may well seek to avoid liability for any damages in this case.

Because personal jurisdiction cannot be asserted against MedAire, Dr. Reinhart, Dr. Monas and Dr. Verma in California, those critical parties cannot be joined under Federal Rules of Civil Procedure 19 or 20. On this basis, the Court should deny the motion to dismiss or stay the current action. *See British Telecommunications PLC v. McDonnell Douglas Corp.,* 1993 WL 149860, *5 (N.D.Cal. May 5, 1993) (in deciding to apply first-to-file rule, court notes that were a defendant to the second action "a proper party and could not be joined in the [first] action" because of personal jurisdiction issues,

11

then the court "would be inclined to weigh this factor heavily against applying the first-to-file rule.")

Additionally, and contrary to defendants' arguments, the claims against British Airways, MedAire, Dr. Reinhart, Dr. Monas and Dr. Verma are not sufficiently similar as to allow for application of the first-to-file rule. First, for the claims against the Arizona defendants to fall within the Montreal Convention, the Arizona parties must be considered agents of the air carrier. A key issue in the litigation against MedAire, Dr. Reinhart and Dr. Monas will therefore be each defendant's relationship to British Airways as well as the physicians' relationship to MedAire.[5] Second, insofar as the indemnity agreement becomes an issue, that, too, is a claim that is not capable of adjudication in the California action.

Neither the agency nor the indemnification questions are at issue in the California litigation, as that suit concerns only whether Mr. Baillie suffered a compensable "accident" for Montreal Convention purposes. Discovery in the Arizona suit will thus be substantially different than the discovery that has been conducted to date in the California suit, focusing as it will on the contractual and *de facto* relationship between British Airways and MedAire and the nature of the employment of Drs. Reinhart and Monas. Plaintiff has been unable to obtain information relevant to those questions in the course of the California suit.

Because the parties to the Arizona suit are not and cannot be parties to the California action and because the issues in the Arizona suit differ meaningfully from the issues in the California action, application of the first-to-file rule would be improper here.

**B. The balance of convenience weighs in favor of allowing the Arizona action to proceed**

Even if the first-to-file rule could be applied, when "the balance of convenience weighs in favor of the later-filed action" it is appropriate to deny a motion to dismiss, stay or transfer the second filed suit. *Ward v. Follett Corp.,* 158 F.R.D. 645, 648 (N.D.Cal.1994). This analysis is analogous to the "convenience of parties and witnesses"

---

[5] In their Answer, Drs. Reinhart and Monas deny they are employees of MedAire. *See* ECF Doc. No. 13, p. 2, ¶ 3.

12

under a 28 U.S.C. § 1404(a) transfer of venue motion. *See Med–Tec Iowa, Inc. v. Nomos Corp.,* 76 F.Supp.2d 962, 970 (N.D.Iowa 1999); *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 133 (S.D.N.Y.1994).

In this case, MedAire, Dr. Reinhart, Dr. Monas and plaintiff are all residents of Arizona or transact substantial business in Arizona. Following his removal from Flight 289, Mr. Baillie was admitted to and treated at an Arizona hospital for several months prior to his death. The vast majority of damages evidence is situated in Arizona. Given that MedAire's primary place of business is Arizona and that Dr. Reinhart and Dr. Monas appear also to work out of Arizona, liability evidence in addition to evidence concerning the agency and employment relationships among those three and between MedAire and British Airways will also mostly be situated in Arizona. In light of this, it would be a provident exercise of this Court's discretion to deny the Motion to Dismiss or, in the Alternative, Stay Proceedings, and allow the Arizona action to proceed.

## CONCLUSION

For all the foregoing reasons, this Court should deny the Motion to Dismiss or, in the Alternative, Stay Proceedings submitted by British Airways and joined (only with respect to the request for a stay) by MedAire, Dr. Reinhart and Dr. Monas.

Dated:  March 28, 2014                            Respectfully submitted,

                                                  KREINDLER & KREINDLER LLP


                                                  By: /s/ Francis G. Fleming
                                                  Francis G. Fleming, 004375
                                                  Robert J. Spragg
                                                  750 Third Avenue, 32nd Floor
                                                  New York, NY 10017
                                                  Tel.: (212) 687-8181
                                                  Fax: (212) 972-9432
                                                       -and-
                                                  Stephen M. Dichter, 004043
                                                  CHRISTIAN DICHTER & SLUGA, P.C.
                                                  2700 North Central Avenue, Suite 1200
                                                  Phoenix, Arizona 85004
                                                  Tel: (602) 792-1700
                                                  Fax: (602) 792-1710

13

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Scott D. Cunningham, Esq.
Ivy L. Nowinski, Esq.
Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, CA 90067
scunningham@condonlaw.com
inowinski@condonlaw.com
-and-
Anthony U. Battista, Esq.
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
abattista@condonlaw.com
-and-
J. Gary Linder, Esq.
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, AZ 85012
glinder@jshfirm.com
*Attorneys for Defendant British Airways PLC*

Mark C. Dangerfield
Wm. Charles Thomson
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
mark.dangerfield@gknet.com
wct@gknet.com
*Attorneys for Defendants MedAire, Inc.; Steven Joe Reinhart, D.O.; and Jessica Monas, M.D.*

- and -

I hereby certify that on March 28, 2014, I served the attached document by mail via the United States Postal Service on the following, who are not registered participants of the CM/ECF System:

Dr. Ratan Verma

13 Dogwood Court, Oadby,

Leicester, England, LE2 4EB

                                                       /s/ Lisa Ranieri