# EXHIBIT 14

# Robert J. Spragg

**From:** Francis G. Fleming
**Sent:** Friday, December 27, 2013 1:06 PM
**To:** 'Cunningham, Scott D.'; rsprag@kreindler.com; Robert J. Spragg
**Cc:** Battista, Anthony U.; Nowinski, Ivy L.
**Subject:** RE: BA/Baillie

1. I hope you had a pleasant trip back to Rochester for the Holidays.   There has been no prejudicial delay in your response.
2. For the nearly 39 years I have been practicing law, a deposition is "scheduled" when the parties agree to a time and place (and other incidents like court reporter etc.);  scheduling is not a matter of unilateral conduct.  It is true that BA promptly offered its crew for deposition in London shortly following the status conference in this case, and as a result Rob Spragg and I cleared our calendars to be able to act on the proposal,  although that implied a burden and expense for plaintiff that in other circumstances would not  be unacceptable. However, that was before we had received any discovery from  BA [or its written disclosures?] and discovered that we do not have any clue from what has been disclosed about what happened on the flight,  even what the route was, the jobs or assignment of the various crewmembers, or how BA interfaced with needed medical input.
3. We discussed several possible resolutions of this problem, including having BA submit its factual claims before filing its motion and/or disclosing the factual aspects of the crew statements about the flight.  BA rejected all suggestions.
4. We also informed BA that its so-called privilege log was, in plaintiffs' view,  insufficient (disclosing only that the crew statements were routed through an employee who is assigned to the insurance section of BA's business staff) and if BA did  not otherwise explain it's factual position that whether Mr. Baillie was injured by BA's  failures to provide treatment or divert over a 10 plus hour flight in the face of constant severe chest pain , high pulse and low blood pressure continuously worsening in degree, etc. was not an  unexpected or unusual event external to the passenger or an "accident" within the well known meaning of the Warsaw/ Montreal treaty provisions,  we could not take the depositions when offered; instead, we intended to present the sufficiency of the privilege log to the Court in the form of a motion to compel.
5. Additionally, we learned   [for the first time]  from the materials produced by BA pursuant to the plaintiffs' document requests that BA that had an indemnity agreement with an  Arizona business called MedAire, Inc. which  BA crewmembers  BA "patched" in during the flight to obtain medical input about Mr. Baillie's medical condition  and recognized that the failure to treat or divert  may have been the fault of Medaire rather than BA.   So we recognized we needed to sue MedAire and give MedAire notice of the depositions so the testimony would not have to be repeated.   That effort is in progress and BA has been fully informed as we go along.  Your statement that "plaintiffs had  knowledge of MedAire's potential involvement in the proceedings since the start of the litigation" is clearly wrong and misleading.
6. So it is completely wrong to say plaintiffs "cancelled " the depositions.
7. As to plaintiffs' notice for early February,  BA has informed us that it requires six weeks to schedule these depositions.  Our notice complies with BA's demands in that respect.   You can not have it both ways:  either BA needs six weeks which gets us to early February or it does not.  Which is it? Should you wish a different time, please give us a proposal and we will attempt to accommodate BA's wishes.  However, as noted above,  there are several factors to be taken into consideration regarding this scheduling and we do not control them all.   What is more important is that we have asked BA to provide us with  the scheduling  details ( i.e. bidding protocol, scheduled flights and/or vacations or training etc.) and BA has not done so.  Where will the witnesses be between now and early February?    In this respect, I do not agree that our recent emails satisfy the requirements of the local rules regarding meet and confer.
8. As to place,  I am well aware of the convention about scheduling non-party witnesses in their place of residence, but there are numerous exceptions to this general rule,  particularly as here where the witnesses' jobs  require them to travel, frequently to the US.   More meet and confer on this subject is also warranted.
9. Bottom line,   we need to know generally  what your crewmembers are prepared to say about this flight, their interaction with MedAire and what Mr. Baillllie was going through during the flight before we cross examine your employee  witnesses.  Your strategy amounts to no more than a "hide the ball" until time runs out approach and that is not fair.  You have forced us to file a motion and we will do so.  When that is resolved we will promptly take the crew and other BA depositions.   As soon as we can get MedAire and the physicians named and sued in Arizona,  we will conduct the depositions of their witnesses as well.   Then we will know whether or not the facts

1

are in dispute or not, and if not whether there was an accident which injured Mr. Baillie on board his international flight, or whether the dispute must be resolved by a jury.
Yours truly, Frank

**From:** Cunningham, Scott D. [mailto:SCunningham@condonlaw.com]
**Sent:** Thursday, December 26, 2013 1:07 PM
**To:** Francis G. Fleming; rsprag@kreindler.com; Robert J. Spragg
**Cc:** Battista, Anthony U.; Nowinski, Ivy L.
**Subject:** RE: BA/Baillie

Dear Frank:

We write in response to your December 20, 2013 email below. Sorry for the delayed response but as you know I am out of town for the Holidays visiting with my family in upstate New York.

We respectfully disagree with the contents of your email. We scheduled seven (7) British Airways witnesses at significant cost to provide deposition testimony regarding the subject flight at British Airways' headquarters in London from January 7 through 10, 2014. We provided you with notice of the deposition dates in November in order to expedite discovery and to meet the February 4, 2014 summary judgment deadline set by the Court. When we offered these dates in November, Plaintiff's demanded disclosure of witness statements created at the request of counsel and that BA supplement its initial disclosures. We advised you that Plaintiff was not entitled to the requested documents during various telephone conversations and in writing on December 9, 2013. Despite completing the meet and confer process on December 9, 2013, Plaintiffs failed to file a motion with the court to resolve the discovery dispute.

Instead, Plaintiffs unilaterally cancelled the depositions scheduled for January 7 through 10 and rescheduled them by notice for February 4 through 7, 2014 in Los Angeles after discovery relating to British Airways summary judgment motion is scheduled to have been completed. We will not be producing the witnesses as noticed and will be filing a motion for a protective order. As you are no doubt aware, the noticed individuals are not officers, directors, or managing agents of British Airways. Moreover, as you are no doubt aware, the general presumption is that a corporation is deposed at it principle place of business and London is British Airways' principle place of business, not Los Angeles. Accordingly, plaintiff's deposition notices are defective on their face.

Regarding the addition of MedAire as a party to the litigation, Plaintiffs have had knowledge of MedAire's potential involvement in the proceedings since the start of the litigation and in November served non-party subpoenas on MedAire in Arizona. To date, Plaintiff's have taken no action to add Medaire as a party or file a separate proceeding. Plaintiff's are now contemplating a new action against MedAire in Arizona in an effort to circumvent a discovery scheduling order by Judge Wilson which plaintiffs believe is not to their advantage.

Lastly, in our view the telephone calls from before the Holiday and our recent exchange of emails satisfy the meet and confer process as required by Local Rule 37-1. Please let us know if you disagree so that we may file a motion for a protective order.

Regards

Scott

**From:** Francis G. Fleming [FFleming@kreindler.com]
**Sent:** Friday, December 20, 2013 12:12 PM
**To:** Cunningham, Scott D.; rsprag@kreindler.com; Robert J. Spragg
**Cc:** Battista, Anthony U.; Nowinski, Ivy L.
**Subject:** RE: BA/Baillie

Scott, I feel duty bound to expressly respond to your incomplete and thereby misleading email concerning the BA Cabin Crew depositions.
First, The BA cabin crew depositions were never "scheduled" or "calendared" for the week of January 6, 2014 in London. Rather, before either documents or BA's privilege log was provided to us, BA indicated that it needed six weeks

2

advance notice to conveniently accommodate the Cabin crews' other flying duties on BA flights, and you offered the week of January 6th with that constraint in mind. In the spirit of co-operation, Rob Spragg and I cleared our commitments for that week and made ourselves available to travel to London to conduct these depositions. We expected some corresponding co-operation from BA to get this work done quickly. However, when we received BA's discovery responses, self –serving and conclusory privilege claims and vacuous initial disclosures, we immediately brought to BA's attention that we had no clue about what these witnesses intended to say about what took place on the flight, and that this was particularly problematic for us since Mr. Baillie was unaccompanied on the trip and after he arrived in the US, he was physically and medically unable to describe in any detailed way what had happened to him and what BA did or not do during the flight. For example, in your disclosures, you indicated merely that these cabin crew will testify about facts, circumstances, etc. during the flight, but failed to provide any details about what had happened, who did what, who saw what, or what Baillie might have said or done, etc. We asked for your co-operation in this regard to either disclose the cabin crew statements that were collected by a BA insurance person, divulge the facts set forth in those statements, or provide us before the depositions with affidavits and/or declarations from these witnesses as will be submitted in support of BA's motion for summary judgment and thereby allow us to proceed quickly. Rather than help, BA refused to supplement its disclosures in any way and refused to even disclose the factual content of the crew statements to the BA insurance representative.

Moreover, your email fails to even mention the fact that the documents produced evidence an indemnity agreement between BA and a company called MedAire, Inc., with offices and apparently physicians located in Phoenix, Az. with which the BA crew had contact about Mr. Baillie's life threatening condition during the flight I informed you that we believed it was therefore necessary to sue MedAire, Inc. ( I note here that BA has raised the fault of third parties, presumably referring to MedAire, Inc., in its pleadings as an affirmative defense) and we also believed that the depositions of the physicians should preceed the depositions of the BA crew.

Similarly, the documents produced show the name of a physician (apparently from the UK) who was on board BA289 and who tended to Mr. Baillie in some way and we told you that if we had to go to London for crew depositions, we should conduct that deposition on the same trip abroad.

No arrangements have been made or offered to address this testimony.

I have to say I have come to the conclusion that BA is more interested in taking tactical advantage of the schedule regarding BA's motion for summary judgment than allowing the discovery to proceed smoothly and fairly. While I do not recall Judge Wilson saying so, I believe it was implied in his thinking that the expedited schedule he imposed required that both sides of this case would do what they can to facilitate the required discovery. We have given BA several ways to attempt to work around these roadblocks, and productively take advantage of the early January week to move the ball forward, but BA has elected not to co-operate but rather insist on us filing a motion to get even basic factual information. Finally, I have informed you I am preparing a Complaint against Medaire and the physicians involved in Mr. Baillie's "treatment" and requested your position on a change of venue to Arizona where not only MedAire is in business and amenable to suit, but Mrs. Baillie and her family also reside, and to where BA flies every day. BA has refused to agree to any change of venue, which is of course its right, but which also shows a disinclination to have this dispute decided fairly on the merits in favor of achieving a victory based on an unfortunate schedule that is unfair to the Baillie family

As is manifestly clear, the discovery process in this case has several implications and BA's refusal to co-operate and /or compromise has slowed things down. Regards, Frank Fleming

PS please note Rob's correct email address, he did not get your email until I copied him FGF

---

**From:** Cunningham, Scott D. [mailto:SCunningham@condonlaw.com]
**Sent:** Thursday, December 19, 2013 11:09 PM
**To:** Francis G. Fleming; rsprag@kreindler.com
**Cc:** Battista, Anthony U.; Nowinski, Ivy L.
**Subject:** BA/Baillie

Dear Frank,

Further to our telephone conference today, this will confirm that you have advised us to take the depositions of the British Airways cabin crew and flight crew scheduled for the week of January 6, 2014, in London off calendar. Please note that we will notify British Airways so these individuals will be released for crew scheduling and that British Airways will need at least six weeks advanced notice for scheduling these witnesses again. As a result, it is unlikely that the crew members will be available to appear for depositions prior to the filing of British Airways' Motion for Summary Judgment on February 4, 2014, pursuant to Judge Wilson's Order.

If you should have any questions, please let us know.

Kind regards,

Scott