Francis G. Fleming, 004375
ffleming@kreindler.com
Robert J. Spragg
rspragg@kreindler.com
KREINDLER & KREINDLER LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel.: (212) 687-8181
Fax: (212) 972-9432

Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Tel: (602) 792-1700
Fax: (602) 792-1710

*Attorneys for Plaintiff Linda Ann Baillie*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

----------------------------------------------------x

| | |
|---|---|
| LINDA ANN BAILLIE, individually, as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, and on behalf of all heirs and next of kin of JAMES DONALD BAILLIE, II, deceased, | Case No.: 2:14-CV-00420-DGC |
| Plaintiff, | **JOINT CASE MANAGEMENT REPORT** |
| v. | |
| MEDAIRE, INC., STEVEN JOE REINHART, D.O., JESSICA MONAS, M.D., RATAN K. VERMA, M.D. and BRITISH AIRWAYS, PLC, | |
| Defendants. | |

----------------------------------------------------x

Pursuant to the Order Setting Rule 16 Case Management Conference entered by this Court on March 11, 2014, the parties, by and through their undersigned counsel, hereby submit their Joint Case Management Report.

**1. PARTIES WHO ATTENDED RULE 26(f) MEETING AND ASSISTED IN DEVELOPMENT OF CASE MANAGEMENT REPORT**

On April 9, 2014, the counsel listed below met and conferred pursuant to Fed. R. Civ. P. 26(f). All counsel assisted in the development of this Joint Case Management Report.

Stephen M. Dichter, Esq.
CHRISTIAN DICHTER & SLUGA, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
*Attorneys for Plaintiff Linda Ann Baillie*

Francis G. Fleming, Esq.
Robert J. Spragg, Esq.
KREINDLER & KREINDLER LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
*Attorneys for Plaintiff Linda Ann Baillie*

Scott D. Cunningham, Esq.
Ivy L. Nowinski, Esq.
CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, CA 90067
*Attorneys for Defendant British Airways PLC*

Anthony U. Battista, Esq.
CONDON & FORSYTH LLP
7 Times Square
New York, NY 10036
*Attorneys for Defendant British Airways PLC*

J. Gary Linder, Esq.
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, AZ 85012

2

*Attorneys for Defendant British Airways PLC*

Mark C. Dangerfield, Esq.
Wm. Charles Thomson, Esq.
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
*Attorneys for Defendants MedAire, Inc.;*
*Steven Joe Reinhart, D.O.; and Jessica Monas, M.D.*

## 2. LIST OF ALL PARTIES IN THE CASE, INCLUDING ANY PARENT CORPORATIONS OR ENTITIES

Plaintiff:  Linda Ann Baillie, Individually, and as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, deceased, and on behalf of all heirs and next of kin of JAMES DONALD BAILLIE, II, deceased, including James Donald Baillie, III, Jacob Edward Baillie, Jonathan David Baillie and Laura Marie Baillie

Defendant:  MedAire, Inc.

Defendant:  Steven Joe Reinhart, D.O.

Defendant:  Jessica Monas, M.D.

Defendant:  British Airways PLC.  The parent company of British Airways PLC is International Airlines Group.

Defendant Ratan K. Verma, M.D.

## 3. A SHORT STATEMENT OF THE NATURE OF THE CASE

### A. Plaintiffs' Claims

On March 23, 2012, James Donald Baillie, II ("Mr. Baillie"), a citizen and resident of Maricopa County and the State of Arizona, was traveling on British Airways Flight 289 from London, England to his home in Phoenix, Arizona.  Immediately prior to and during the course of Flight 289, Mr. Baillie experienced chest pains and other signs of a heart attack.  British Airways failed, however, to adequately respond to Mr. Baillie's medical

emergency and, in part on the basis of information provided by MedAire and its physicians, proceeded to make operational decisions that they knew or should have known would cause Mr. Baillie's condition to unnecessarily worsen, ultimately resulting in his death if he didn't receive timely treatment.

British Airways and MedAire have a contractual arrangement by which MedAire provides "medical advice and support" through its doctors to British Airways crew members "during medical incidents."  Under the terms of the agreement, which British Airways has refused to produce, MedAire's physicians are available "24 hours a day" to give "advice and instruction" to the airline's crews during medical incidents.  MedLink's doctors are "familiar with the flight environment" and work "to protocols and guidelines agreed with British Airways and have details of all medical equipment carried on board."  MedLink also makes all "ground arrangements" for medical treatment of a passenger should "an aircraft need[] to be diverted."

An additional service MedAire provides to British Airways is called "MedLink Gate Clearance."  MedLink Gate Clearance is available for use by any of the airline's ground staff or cabin crew "who need advice on a passenger's health situation or fitness to fly" prior to takeoff.  Under the terms of the agreement between British Airways and MedAire, "MedLink assumes legal liability for medical incidents in which they are involved, so long as their advice is followed."

Mr. Baillie, who had no prior history of heart problems, arrived at British Airways Flight 289 on March 23, 2012 feeling short of breath and experiencing discomfort in the center of his chest.  After he boarded the airplane at 1454 GMT, feeling chest pains, Mr. Baillie alerted a flight attendant to his status, explaining that he wasn't sure he should be

4

on the flight.  Nevertheless, the cabin crew closed the aircraft doors, leaving Mr. Baillie with a sense of imminent doom.  Remembering advice about what to do if one feels one is having a heart attack, Mr. Baillie took asprin.

Without consulting MedLink and without any determination as to whether Mr. Baillie was medically fit to fly, the flight crew taxied to the runway and took off at 1546 GMT.  Both prior to takeoff and during the initial portion of Flight 289, Mr. Baillie continued to feel chest pains, which got worse after the aircraft took off, and continued to notify the British Airways flight crew of this.  Mr. Baillie was hot, looked pale and was having difficulty breathing.  His pulse was irregular and he appeared "confused."  Over an hour into the flight, and with approximately 9 hours and 30 minutes to go, Mr. Baillie again told a British Airways flight attendant that he was experiencing chest pain.  In light of his condition, the flight crew gave Mr. Baillie supplemental oxygen, but did nothing else.

Approximately three hours into the flight, the British Airways flight crew first contacted MedAire.  The British Airways pilot told the MedAire representative that "we've got a 61 year old male … who was a little out of breath when he boarded," "has pain in the central chest and feels hot and … is a bit pale," and "we've put him on therapeutic oxygen."  A short time later, a MedAire physician named Dr. Reinhart joined the call, which lasted only a few minutes.  Dr. Reinhart advised the crew to continue with the supplemental oxygen and to try to find a physician on board who could take Mr. Baillie's vital signs.  Dr. Reinhart advised the crew to contact him with the vital signs information at which point he would determine whether Mr. Baillie was stable enough for a dose of nitroglycerin.

Approximately twenty minutes later, the British Airways flight crew again contacted MedAire and was again connected with Dr. Reinhart. Dr. Reinhart confirmed that he understood that there was a physician on board the flight.[1] Dr. Reinhart was told that Mr. Baillie had "crackles" on the left side of his chest (a consequence of fluid buildup in the lungs and a sign of heart failure). After hearing Mr. Baillie's vital signs, Dr. Reinhart determined that his blood pressure was too low for nitroglycerin and recommended that the flight crew simply continue to provide him with supplemental oxygen. Because six hours remained in the flight, Dr. Reinhart advised the crew to contact MedAire again if Mr. Baillie's condition deteriorated, giving them signs to watch for, and noted that if the situation worsened they would have to consider a flight diversion.

Approximately three hours and ten minutes later, during which time the flight attendant assigned to Mr. Baillie took a nap, the British Airways flight crew again contacted MedAire and briefed a different customer service representative on Mr. Baillie's condition. The MedAire representative told the British Airways flight attendant that Dr. Reinhart's work shift was over and that a new physician would have to be updated. Shortly thereafter, the new MedAire physician, Dr. Monas, joined the call. The flight attendant provided Mr. Baillie's vital signs and told Dr. Monas that Mr. Baillie had taken aspirin seven hours previously but had been given no other medication; that he was complaining about pain in the center of his chest; that he said he was feeling worse; and that the on-board physician described him as looking "considerably worse." Dr. Monas recommended that Mr. Baillie be given a single dose of nitroglycerin. The pilot then

---

[1] The on-board physician was Dr. Verma, who is a resident of the United Kingdom.

explained that Dr. Reinhart had advised against doing so and had suggested that the flight might need to make a diversion, but agreed to administer the nitroglycerin and to check back with MedAire after doing so.

Ten minutes later, the flight crew contacted MedAire again and told Dr. Monas that the physician on board the flight, Dr. Verma, did not want to administer the nitroglycerin to Mr. Baillie because his blood pressure was too low.  Dr. Monas then asked to be rebriefed on Mr. Baillie's medical condition and the flight crew told her that his blood pressure was 100/80, he had a pulse of 110, he was sweating and short of breath and that he still was experiencing chest pains.  Based on this information, Dr. Monas told the British Airways crew that if they felt that Mr. Baillie was not looking well then they could start to look for diversion airports.  She also decided to "hold off on the nitroglycerin."

Shortly thereafter, a representative from British Airways Operations Control was brought into the call and the pilot told her that there was a possibility of a diversion, that the nearest airport was Chicago, that they were going to get an update from the on-board physician in ten minutes and that they would contact her if they decided that they had to divert.  At this point, Dr. Monas asked the flight crew to make sure that Mr. Baillie was lying down with his legs elevated.  The pilot acknowledged Dr. Monas and told Operations Control that he'd update them within ten or fifteen minutes and if and when a decision was made regarding diversion.  The pilot did not provide any further updates to MedAire.

The British Airways pilots did not divert the flight and continued to Phoenix Sky Harbor International Airport where they arrived at the gate, approximately 10 hours 41 minutes after departing the gate at London Heathrow Airport.

By the time the flight arrived in Phoenix, Mr. Baillie's medical condition was very serious.  He was taken directly from the airplane by ambulance to the emergency room at St. Luke's Medical Center in Phoenix.  Mr. Baillie was diagnosed as having suffered an acute myocardial infarction (heart attack) as well as acute respiratory failure, cardiogenic shock and acute systolic heart failure.  He was admitted to St. Luke's Medical Center from the emergency room in critical condition and was then treated in the intensive care unit at St. Luke's Hospital until March 30, 2012, when he was transferred in guarded condition to The Mayo Clinic in Phoenix for heart transplant.  He remained hospitalized at The Mayo Clinic until his death on July 1, 2012.

Plaintiff's claims against British Airways, MedAire, Inc. and Drs. Reinhart, Monas and Verma are governed by an international treaty called The Convention for the Unification of Certain Rules for International Carriage by Air, 49 U.S.C. 40105, 1999 WL 33292734 (2000), commonly known as the Montreal Convention.  Under Article 17 of the Montreal Convention, an airline and its agents and servants are liable for "damage sustained in case of death or bodily injury of a passenger upon condition only that the accident that caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."  The term "accident" has been defined by the United States Supreme Court as "an unusual or unexpected event that is external to the passenger," *Air France v. Saks*, 470 U.S. 392, 405 (1985), and has been interpreted to include instances where an airline has failed to follow its own procedures and aviation industry standards when responding to a passenger's medical emergency, failed to render competent medical assistance to a passenger and/or failed to divert the flight to land at an airport where emergency medical treatment was available, adversely

affecting the passenger's medical outcome.

Under the Montreal Convention, the defendants are strictly liable for proven damages up to 113,100 Special Drawing Rights (approximately $175,000).  For amounts in excess of 113,100 SDRs, they are liable unless they establish the applicability of one of the two defenses available to them under the Convention.

## B. Defendant British Airways PLC's Defenses:

British Airways respectfully disagrees with much of plaintiffs' lengthy statement above and does not herein adopt any of plaintiffs' representations.  This case arises from exactly the same set of operative facts as the case plaintiffs filed against British Airways in the United States District Court for the Central District of California in which there is currently a Motion for Summary Judgment pending.  *See* Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Proceedings Pending Resolution of First-Filed Action [Doc. No. 11].  This is plaintiffs' wrongful death lawsuit, seeking damages for the death of Mr. Baillie.  Mr. Baillie was a passenger onboard British Airways flight BA 289 from London to Phoenix on March 23, 2012.  The flight itself was uneventful.   The admissible evidence will show that British Airways followed all of its policies and procedures in providing Mr. Baillie with all appropriate medical care on board the aircraft and was never affirmatively directed by medical care personnel to make an emergency landing.  In fact, Mr. Baillie himself demanded that the aircraft continue on its normal course.  During the subject flight, Mr. Baillie was attended to by at least two doctors who were passengers onboard the flight.   In addition, medical information and recommendations were provided from the ground by medical personnel at MedAire via

telephone.  Plaintiffs allege that Mr. Baillie died on July 1, 2012, two months after the completion of the subject flight.  It is British Airways' position that Mr. Baillie died of issues related to congestive heart failure, which was not related to the normal operations of British Airways flight BA 289.

British Airways agrees with plaintiffs' statement that their claims are governed by the Montreal Convention, a treaty of the United States.  However, British Airways disagrees with plaintiffs' assessment of liability under the Montreal Convention.  Under the Montreal Convention, the plaintiffs bear the burden of proving that Mr. Baillie sustained "bodily injury" as the result of an "accident," which has been defined by the United States Supreme Court as "an unusual or unexpected event that is external to the passenger." *See Air France v. Saks*, 470 U.S. 392, 405 (1985).  British Airways intends to file a motion for summary judgment (virtually identical to the motion for summary judgment that British Airways has already filed in the duplicative action filed by plaintiffs in the United States District Court for the Central District of California) on the grounds that Mr. Baillie's death was not the result of an "accident" that occurred onboard British Airways flight BA 289.  Courts have routinely held that passengers who suffer illnesses, including heart attacks, on board an aircraft have not sustained personal injuries as the result of an "accident" under the Montreal Convention and that their claims are, therefore, not compensable.  *See Aziz v. Air India Limited*, 658 F. Supp. 2d 1144, 1148 (C.D. Cal. 2009) (passenger's heart attack not an "accident" under the Montreal Convention); *Fischer v. Northwest Airlines, Inc*., 623 F. Supp. 1064 (N.D. Ill. 1985) (same); *Rajcooar v. Air India Limited*, 89 F. Supp. 2d 324, 328 (E.D.N.Y. 2000) (same); *Scarboro v. Swissair*, 28 Avi. Cas. (CCH) 16,147 (N.D. Ga. 2002) (summary judgment in favor of

airline finding no accident when passenger died of a seizure during in-flight snack service); *Hipolito v. Northwest Airlines, Inc.*, 15 Fed. Appx. 109 (4th Cir. 2001) (summary judgment in favor of airline upheld on grounds that passenger's in-flight asthma attack and failure to have full bottle of oxygen on-board not Article 17 accidents); *Abramson v. Japan Airlines, Co.*, 739 F. 2d 130, 131 (3d Cir. 1984) (aggravation of existing injury during routine flight not an accident).

### C. Defenses of Defendants MedAire, Inc., Steven Joe Reinhart, D.O. and Jessica Monas, M.D.:

The MedAire Defendants do not adopt plaintiff's statement of the case, but do not believe this is the proper forum to argue the facts.

MedAire provides remote medical advice to airlines with sick or injured passengers on board. MedAire contracts with emergency room doctors to provide this advice. During the course of BA Flight 289's flight from London to Phoenix on March 23, 2012, the pilot or cabin crew spoke to two different doctors engaged by MedAire. The conversation with Dr. Reinhart began about three hours into the flight, and the conversation with Dr. Monas began about seven hours into the flight. The pilot and cabin crew gave these doctors some information about Mr. Baillie, but they never had the chance to see or speak with Mr. Baillie, nor were they able to speak with the on-board doctors who directly observed and evaluated Mr. Baillie.

Based on the information provided Dr. Reinhart, he recommended that Mr. Baillie be kept lying down and on supplemental oxygen, and that, if his condition appeared to deteriorate, a diversion would have to be considered. Dr. Monas later recommended that diversion locations and options be considered. The pilot, who makes the final decision on

such matters, decided not to divert the plane but rather to continue to Phoenix.

Based on the information they had and the facilities available on the plane, the MedAire Defendants gave proper and competent medical advice. In any event, the plaintiff has offered no proof that that Mr. Baillie would have lived but for the MedAire Defendants' actions or omissions, or that Mr. Baillie's death was caused by an on-board "accident" within the meaning of the Montreal Convention.

### 4. <u>JURISDICTIONAL BASIS FOR THIS CASE</u>

This case was originally filed in the Superior Court for Maricopa County, Arizona and was subsequently removed to this Court by Defendant British Airways PLC, pursuant to 28 U.S.C. § 1441(a) and with the consent of Defendants MedAire, Inc., Steven Joe Reinhart, D.O. and Jessica Monas, M.D., based upon the existence of a federal question, pursuant to 28 U.S.C. § 1331, in that plaintiff's claims arise under the Montreal Convention Treaty.

### 5. <u>PARTIES THAT HAVE NOT YET APPEARED</u>

Defendant Ratan K. Verma, M.D. is, upon information and belief, a citizen of the United Kingdom, residing at 13 Dogwood Court, Oadby, Leicestershire, England LE2 4EB.  According to Plaintiff, she served the summons and complaint on Defendant Ratan K. Verma, M.D. pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, on the 15th of November 1965.  Plaintiff says she forwarded all necessary documents to the Foreign Process Section of the Royal Courts of Justice in London, England and has

received confirmation that Dr. Verma was served on March 28, 2014. Dr. Verma has not yet made an appearance in this case.

Counsel for British Airways will likely be representing Dr. Verma in this matter and will be working with counsel for plaintiffs regarding service issues. It is anticipated that Dr. Verma will be filing a motion to dismiss for lack of personal jurisdiction.

**6. <u>STATEMENT REGARDING ADDITION OF PARTIES TO THE CASE OR INTENT TO AMEND OR SUPPLEMENT PLEADINGS</u>**

The plaintiff does not anticipate naming additional parties to this case or otherwise amending the pleadings.

Defendants MedAire, Dr. Reinhart, and Dr. Monas (the "MedAire Defendants") do not anticipate naming additional parties to the case.

British Airways does not anticipate adding any additional parties at this time.

**7. <u>ELECTION REGARDING EXPEDITED TRIAL AND CERTIFICATION</u>**

The parties have elected <u>not</u> to proceed with an expedited trial. Counsel for plaintiff certifies that he discussed with his client the expedited trial alternative and specifically the good faith estimates in Section C.3 of the Court's Order filed March 11, 2014. Counsel for Defendants have likewise conferred with their clients regarding the expedited trial alternative, including the good faith estimates referenced in the Court Order filed March 11, 2014.

**8. <u>CONTEMPLATED MOTIONS</u>**

Plaintiff does not anticipate filing any dispositive motions. The defendants generally anticipate filing dispositive motions on some or all of the issues in the case, and specifically anticipate filing a motion for summary judgment on the issue of whether Mr.

Baillie's death was caused by an "accident" within the terms of the Montreal Convention. Defendant British Airways PLC has filed a Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Proceedings Pending Resolution of First-Filed Action [Doc. No. 11], which defendants MedAire, Inc., Steven Joe Reinhart, D.O., and Jessica Monas, M.D. have joined with respect to the request for a stay. Plaintiff has filed her opposition to defendant's motion. If the motion is denied, British Airways intends to file in this Court the Motion for Summary Judgment that is currently pending in plaintiffs' action in the United States District Court for the Central District of California.

As stated above, it is likely that Dr. Verma will be filing a motion to dismiss for lack of personal jurisdiction and possibly under the "Good Samaritan" law.

## 9. SUITABILITY OF REFERENCE TO UNITED STATES MAGISTRATE JUDGE FOR SETTLEMENT CONFERENCE OR TRIAL

The parties do not believe this case should be referred to a United States Magistrate Judge for trial. Plaintiff is willing to participate in a settlement conference before a United States Magistrate Judge at any time.

## 10. STATUS OF RELATED CASES PENDING BEFORE OTHER COURTS OR OTHER JUDGES OF THIS COURT

There is a related case pending in the United States District Court for the Central District of California, styled *Linda Ann Baillie v. British Airways PLC*, Case No. 2:13-cv-04681-SVW-RZ. British Airways has filed a motion for Summary Judgment in that case and plaintiff has filed her opposition. On April 9, 2014, United States District Judge Stephen V. Wilson granted plaintiff's Fed. R. Civ. P. 56(d) motion to permit further discovery for a period of sixty (60) days. A copy of Judge Wilson's April 9, 2014 Order is attached hereto as Exhibit 1. The Court further ordered plaintiff to file a supplemental

opposition to British Airways' motion by June 9, 2014 and defendant British Airways to file its supplemental reply by June 23, 2014.

As already noted, Defendant British Airways has filed a motion to dismiss or stay this case in light of the pending California action. Without prejudice to that motion, the parties have agreed that discovery may be taken during the 60-day period allowed by Judge Wilson's April 9, 2014 Order and can be used in both the California case and in this case, and that all parties may be involved in such discovery. The parties have further agreed that, following the end of the 60-day period allowed by Judge Wilson's April 9, 2014 Order, no further discovery shall be taken in either the California case or in this case until the earlier to occur of August 8, 2014, or the date Judge Wilson rules on British Airways' Motion for Summary Judgment.

**11. ELECTRONIC DISCOVERY**

The parties agree to retain any pertinent electronic information in their possession and disclose such information in accordance with the Federal Rules of Civil Procedure. The parties anticipate preserving electronically stored information in its native format and producing documents initially in a searchable .pdf format, and will work together to determine the most efficient and cost effective form in which to produce electronically stored information when such *information i*s requested.

**12. ISSUES RELATING TO CLAIMS OF PRIVILEGE/WORK PRODUCT**

The parties agree to provide detailed privilege logs in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Local Rules, the Court's Standing Order, and federal authority when documents are withheld from production on the basis of privilege or work product, including at the minimum the following

information: (1) the grounds of the privilege being asserted; (2) the nature of the documents, communications or tangible things not produced or disclosed; (3) who the communication is directed to and who it was from; (4) the date; and (5) the Bates Number.

### 13. DISCUSSION OF WHETHER AN ORDER UNDER FEDERAL RULE OF EVIDENCE 502(d) IS WARRANTED IN THIS CASE

At this time, the parties do not believe that an order under Fed. R. Evid. 502(d) is warranted in this case.

### 14. DISCUSSION OF NECESSARY DISCOVERY

**A. Extent, Nature and Location of Discovery Anticipated by the Parties**

The parties anticipate standard written discovery and depositions of plaintiff, defendants and certain third-parties.  The parties agree that the depositions of British Airways crew members will be conducted in London, England.

**B. Suggested Changes to Discovery Limitations Imposed by the Federal Rules of Civil Procedure and LRCiv. 16.2 of the Rules of Practice for the United States District Court for the District of Arizona**

None.

**C. Number of Hours Permitted for Each Deposition, Unless Extended by Agreement of the Parties**

Seven (7) hours.

### 15. DATE FOR EXCHANGE OF FED. R. CIV. P 26(a) INITIAL DISCLOSURES

Without prejudice to British Airways' pending motion to dismiss or to stay this case, and in light of the parties' agreement in paragraph 10 above, the defendants believe that Rule 26(a) Initial Disclosures should not be made until at least the earlier to occur of August 8, 2014 or the date Judge Wilson rules on British Airways' Motion for Summary

Judgment in the California case.  Plaintiffs believe the Rule 26(a) disclosure should be made on May 23, 2014.

**16.**   **PROPOSED DEADLINE DATES**

    **A.**   **Deadline for Completion of Fact Discovery:  February 27, 2015**

    **B.**   **Deadlines for Full and Complete Expert Disclosures:**

        i.   Plaintiff identifies expert witnesses and subject matter of expert testimony: December 5, 2014

        ii.   Defendants identify expert witnesses and subject matter of expert testimony: January 9, 2015

        iii.   Plaintiff's expert testimony disclosure pursuant to Rule 26(a)(2)(B):  March 27, 2015

        iv.   Defendants' expert testimony disclosure pursuant to Rule 26(a)(2)(B):  April 24, 2015

        v.   Rebuttal expert testimony disclosure: May 8, 2015

    **C.**   **Deadline for Completion of Expert Depositions:  June 19, 2015**

    **D.**   **Dispositive Motion Deadline:  July 3, 2015**

    **E.**   **Date by which Parties Will Engage in Good Faith Settlement Talks:  July 17, 2015**

**17.**   **JURY TRIAL**

Plaintiff has demanded a jury trial and defendants do not contest that Plaintiff has properly requested and is entitled to a jury trial on the claims alleged in her complaint.

**18.**   **PROSPECTS FOR SETTLEMENT**

The parties do not anticipate settlement at this time.

17

**19.   OTHER MATTERS**

None at this time.

Dated:  April 16, 2014                    Respectfully submitted,

                                          KREINDLER & KREINDLER LLP

                                          By: */s/ Francis G. Fleming*
                                               Francis G. Fleming, 004375

                                          CHRISTIAN DICHTER & SLUGA, P.C.

                                          By*/s/ Stephen M. Dichter*
                                               Stephen M. Dichter, 004043

                                          *Attorneys for Plaintiff Linda Ann Baillie*


                                          CONDON & FORSYTH LLP

                                          By:*/s/ Scott D. Cunningham*
                                          Scott D. Cunningham, Esq.
                                          Ivy L. Nowinski, Esq.
                                          1901 Avenue of the Stars, Suite 850
                                          Los Angeles, CA 90067

                                          Anthony U. Battista, Esq.
                                          Condon & Forsyth LLP
                                          7 Times Square
                                          New York, NY 10036

                                          J. Gary Linder, Esq.
                                          Jones, Skelton & Hochuli, P.L.C.
                                          2901 North Central Avenue, Suite 800
                                          Phoenix, AZ 85012

                                          *Attorneys for Defendant British Airways PLC*


                                          GALLAGHER & KENNEDY, P.A.

                                          By:*/s/ Mark C. Dangerfield*
                                          Mark C. Dangerfield
                                          Wm. Charles Thomson

1

2575 East Camelback Road

2

Phoenix, Arizona 85016-9225

mark.dangerfield@gknet.com

3

wct@gknet.com

4

*Attorneys for Defendants MedAire, Inc.; Steven*

5

*Joe Reinhart, D.O.; and Jessica Monas, M.D.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2014, I electronically transmitted the attached document and exhibit to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Scott D. Cunningham, Esq.
Ivy L. Nowinski, Esq.
Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, CA 90067
scunningham@condonlaw.com
inowinski@condonlaw.com
-and-
Anthony U. Battista, Esq.
Condon & Forsyth LLP
7 Times Square
New York, NY 10036
abattista@condonlaw.com
-and-
J. Gary Linder, Esq.
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, AZ 85012
glinder@jshfirm.com
*Attorneys for Defendant British Airways PLC*

Mark C. Dangerfield
Wm. Charles Thomson
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
mark.dangerfield@gknet.com
wct@gknet.com
*Attorneys for Defendants MedAire, Inc.; Steven Joe Reinhart, D.O.; and Jessica Monas, M.D.*

- and -

I hereby certify that on April 16, 2014, I served the attached document by mail via the United States Postal Service on the following, who are not registered participants of the CM/ECF System:

Dr. Ratan Verma
13 Dogwood Court, Oadby,
Leicester, England, LE2 4EB


/s/ Yvonne Cañez