Francis G. Fleming, 004375
ffleming@kreindler.com
Robert J. Spragg, *pro hac vice*
rspragg@kreindler.com
KREINDLER & KREINDLER LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel.: (212) 687-8181
Fax: (212) 972-9432

Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Tel: (602) 792-1700
Fax: (602) 792-1710

*Attorneys for Plaintiff Linda Ann Baillie*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

-------------------------------------------------------x

LINDA ANN BAILLIE, individually, as
Personal Representative of the Estate of
JAMES DONALD BAILLIE, II, and on
behalf of all heirs and next of kin of
JAMES DONALD BAILLIE, II,
deceased,

                              Plaintiff,

            v.

MEDAIRE, INC., STEVEN JOE
REINHART, D.O. and JESSICA
MONAS, M.D.,

                              Defendants.

-------------------------------------------------------x

Case No.: 2:14-CV-00420-DJH

**FIRST AMENDED
COMPLAINT FOR WRONGFUL
DEATH AND PERSONAL
INJURIES, NEGLIGENCE,
FAILURE TO INFORM AND
LOSS OF CONSORTIUM**

**JURY TRIAL DEMANDED**

Plaintiff LINDA ANN BAILLIE, Individually, and as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, deceased, and on behalf of all heirs and next of kin of JAMES DONALD BAILLIE, II, deceased, including James Donald Baillie, III, Jacob Edward Baillie, Jonathan David Baillie and Laura Marie Baillie, by their attorneys, Kreindler & Kreindler LLP and Christian, Dichter & Sluga, P.C. ("Plaintiff"), alleges as follows:

## GENERAL ALLEGATIONS

## PARTIES

1.      This action seeks damages on behalf of plaintiff, the heirs and next of kin of James Donald Baillie, II, and the Estate of James Donald Baillie, II, for the personal injuries and wrongful death of James Donald Baillie, II, who died on July 1, 2012 as a result of an accident, under the Montreal Convention, that he suffered on British Airways Flight 289 on March 23, 2012.

2.      Plaintiff LINDA BAILLIE is a citizen and resident of the United States and resides in the County of Maricopa and State of Arizona, and prior to his death Plaintiff's decedent JAMES DONALD BAILLIE, II, deceased, was a citizen and resident of Maricopa County, Arizona.

3.      Defendant MEDAIRE, INC., also doing business as "Medlink" ("MedAire"), is upon information and belief a Nevada corporation, with its principal place of business in Tempe, Arizona; MedAire maintains or maintained its offices in Maricopa County at 1250 W. Washington Street, #442, Tempe, Arizona 85281, and was doing substantial business in Maricopa County, on or about March 23, 2012, sufficient

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

for this Court to exercise jurisdiction over MedAire and its co-defendants and unnamed employees in respect to this matter.

4.     Defendants STEVEN JOE REINHART, D.O. ("Reinhart") and JESSICA MONAS, M.D. ("Monas") are, upon information and belief, citizens and residents of Maricopa County, Arizona, and at all times mentioned herein were licensed physicians employed by or acting as agents for defendant MedAire and on March 23, 2012 were working at the Good Samaritan Hospital in Maricopa County and engaged in conduct out of which these claims arise.

5.     Personal jurisdiction is proper in this District because defendants MedAire, Reinhart and Monas are qualified to do business in the State of Arizona and have been conducting continuous and systematic business in the State of Arizona and within this District.

6.     Plaintiff's decedent, James Donald Baillie, II, suffered injuries while traveling as a fare paying passenger on British Airways Flight 289 on March 23, 2012, under a ticket contract purchased in the United States.

7.     Jurisdiction exists pursuant to 28 U.S.C. § 1331, by reason of a federal question concerning the Convention for the Unification of Certain Rules Relating to International Carriage by Air, May 28, 1999 (entered into force on November 4, 2003), reprinted in S. Treaty Doc. No. 106-45 (hereinafter the "Montreal Convention"), in that this action arises out of injuries sustained by a passenger on board an air carrier engaged in international transportation by an aircraft for hire; the ticket contract between the

3

plaintiff's decedent and the air carrier was purchased in the United States in the State of Arizona; the final place of destination according to said ticket contract was in the United States in the State of Arizona; and the principal and permanent residence of plaintiff's decedent was in the United States in the State of Arizona, County of Maricopa, where MedAire operated its medical assessment and consultation business for airlines and maintained facilities related to that business.

8.     Venue in this District satisfies the requirements of 28 U.S.C. § 1391, *et seq.*, in that defendants MedAire, Reinhart and Monas are subject to personal jurisdiction in this County and State and are engaged in business and reside in this County and State.

9.     At all times herein mentioned, defendants MedAire, Reinhart and Monas were and are engaged in the business of providing medical assessment, advice, guidance, instruction, consultation and options to transportation businesses, including many airlines which are engaged in transporting passengers for hire by air, such as British Airways PLC (hereafter "British Airways"), and defendants, and each of them, hold themselves out as being able to reduce the associated airline's costs related to flight diversions as a result of in-flight passenger medical emergencies by providing informed medical knowledge and management assistance to airlines in evaluating the severity of the condition of passengers who become ill during domestic and international flights, including assessing, defining and implementing the proper care and treatment of emergency medical conditions as may be presented during a lengthy transoceanic flight; further, pursuant to a commercial contract with British Airways, each defendant did

provide medical assessment, advice, guidance, instruction, consultation and options to the crew of a certain Boeing 747-400 aircraft (the "subject aircraft"), which was operated by British Airways as Flight 289 on March 23, 2012 between London, England and Phoenix, Arizona (the "subject flight").

10.     Pursuant to the provisions of the commercial contract between British Airways and defendants MedAire, Reinhart and Monas, as part of an undertaking to reduce airline costs associated with medically-related inflight diversions, including a contractual mutual indemnity provision by which the airline, in this case British Airways, was obligated to abide by MedAire's medical assessment, advice, guidance, instructions, consultations and options in respect to passengers who become ill, MedAire exercised *de facto* control over the operation of the subject flight and aircraft once it was contacted by the crew of the subject flight regarding ill passenger James Donald Baillie, II.

11.     On or about March 23, 2012, plaintiff's decedent James Donald Baillie, II, was a fare-paying passenger on board the subject aircraft and subject flight on a round trip ticket with a final destination in the United States; prior to boarding the subject aircraft, Mr. Baillie had rushed to make the flight and experienced initial symptoms of a medical condition in the form of chest pain, shortness of breath and paleness; upon boarding the subject aircraft at approximately 14:54 GMT/UTC (2:54 P.M. local London time and 6:54 a.m. local Phoenix time) he reported that he did not feel well to the British Airways cabin crew and during the subject flight he complained of "central chest pain," "felt hot," and was having "difficulty breathing;" additionally, after takeoff at 15:46

5

GMT, as the flight progressed, Mr. Baillie was given oxygen by the British Airways cabin crew, took an aspirin and was monitored by cabin crewmembers during the subject flight; but his medical condition persisted as the flight progressed and his symptoms worsened during the course of the flight.

12.     As parties who held themselves out as being able to provide medical emergency assessment, advice, guidance, instructions, consultations and options in regard to the proper care and treatment of sick passengers in an undertaking to reduce airline costs related to diversions, including passengers afflicted with "chest pain," a feeling of being "hot" and "difficulty breathing," and other symptoms which persisted and worsened over the flight as did Mr. Baillie's, defendants MedAire, Reinhart and Monas had a duty to understand and apply the well known principles and medical knowledge regarding the dangerous emergency condition associated with a complicated heart attack as suffered by Mr. Baillie on March 23, 2012, as well as the need for immediate medical intervention and treatment as soon as possible after the onset of symptoms to arrest the progression of damage and minimize the seriousness and extent of injury to the internal components of his heart and other organs of his body.

13.     Defendant MedAire, through its servants, agents and employees, including defendants Reinhart and Monas, contracted to and did provide medical assessment, advice, guidance, consultations and instructions to the crew of BA Flight 289 on March 23, 2012 when British Airways was transporting plaintiff's decedent, who experienced a progressive in-flight medical emergency on BA Flight 289 from London, England to

6

Phoenix, Arizona, during which Mr. Baillie suffered injuries and experienced an accident under the Montreal Convention on account of the failure of defendants, and each of them, to provide prompt appropriate medical assessment, advice, guidance, instructions, consultations, and options regarding appropriate treatment for Mr. Baillie and as a result, Mr. Baillie sustained serious and ultimately fatal injuries.

### FIRST CAUSE OF ACTION FOR DAMAGES AGAINST DEFENDANTS MEDAIRE, REINHART AND MONAS BY PLAINTIFF'S DECEDENT JAMES DONALD BAILLIE, II

14.    Plaintiff Linda Ann Baillie reasserts each and every allegation of paragraphs 1 through 13 above, with the same force and effect as if each was more fully set forth herein at length.

15.    On March 23, 2012, Plaintiff's decedent experienced a progressive emergency medical condition manifested by chest pain and related symptoms during the 10 hour 41 minute subject flight between London and Phoenix.  During the subject flight, Mr. Baillie's condition deteriorated and significantly worsened and he experienced what is commonly called a heart attack or myocardial infarction, and reported his condition to British Airways' cabin crew members who attempted to treat his emergency medical condition and operate the subject flight based on the medical advice, guidance, consultation, options and instructions provided by defendants MedAire, Reinhart and Monas as alleged herein.

16.    On March 23, 2012, at approximately 18:45 GMT, three hours after takeoff, cabin crewmembers of British Airways Flight 289 contacted defendants MedAire

7

and Reinhart to obtain informed medical assessment, advice, guidance, consultation, options and instructions regarding their ill passenger, James Donald Baillie, II, who had been experiencing and exhibiting pain and other symptoms as a result of having exerted himself to get onboard the subject aircraft before takeoff, and who had reported his difficulties and condition to the crew of British Airways and its agents, employees and representatives; however, upon information and belief, defendants, and each of them, failed to provide an informed, adequate and proper medical evaluation, assessment, guidance, consultation, options and treatment instructions to British Airways for James Donald Baillie, II, failed to exercise their authority regarding the flight and failed to cause the flight to be diverted, and failed to enable James Donald Baillie, II, to obtain necessary life saving emergency medical attention and treatment for his in-flight heart attack, causing Plaintiff's decedent to suffer severe aggravated and progressive physical and mental injuries over a prolonged period of time -- at least the last six hours of the subject flight between London, England and Phoenix, Arizona.

17.   In response to Mr. Baillie's symptoms during the first two hours of the subject flight, the British Airways cabin crew provided Mr. Baillie with water and supplemental oxygen, and Mr. Baillie reported that he had treated himself with an aspirin; however, as the flight progressed Mr. Baillie's condition did not improve from the treatment provided and his condition worsened, and the nature of his medical emergency became more clear as it progressively worsened.

18.   After several hours of the 10.7 hour scheduled flight, as a result of Mr.

1
2
3
4
5
6
7
8
9
10
11
12

Baillie's progressively deteriorating medical condition, the British Airways cabin crew sought medical assistance advice, guidance, consultation, options and instructions from defendants, and each of them, in dealing with Mr. Baillie's worsening condition.  In accordance with British Airways' procedures and its contract with MedAire, British Airways crew contacted MedAire from the cockpit of the subject aircraft and spoke initially to defendant Reinhart who was located at Good Samaritan Hospital Emergency Room in Phoenix, Arizona; Mr. Baillie's condition was described to MedAire as involving "a 61 year old male passenger onboard, having some centralized chest pain and is pale.  He had been put on supplemental oxygen but did not have any prior cardiac history and was not taking cardiac medications."

13
14
15
16
17
18
19
20
21
22
23
24

19.    In response to this description of Baillie's illness and request for assistance, defendant Reinhart, failed to recognize the high likelihood of an emergency cardiac situation having been presented, and instead suggested that the cabin crew page the other passengers onboard British Airways Flight 289 to locate a physician onboard who could check Baillie's "vitals" so that he could be given medication in the form of Nitroglycerin; further, rather than recognize the emergency situation that was presented to him, the initial communication sequence (the "first phone patch") ended with defendant Reinhart's instruction to the British Airways cabin crew to "find a physician who wants to go ahead and administer Nitroglycerin if he feels the vitals are stable and then call MedAire back."

25
26

20.    The British Airways crew followed defendants' instructions and made a public address announcement requesting the assistance of any physician on board; in

27
28

FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND PERSONAL INJURIES,
NEGLIGENCE, FAILURE TO INFORM AND LOSS OF CONSORTIUM

response to the public address announcement made by the British Airways crewmembers pursuant to MedAire's directions, three or four physician-passengers initially identified themselves as being capable of providing inflight medical assistance; thereafter, one of those physicians volunteered to conduct an inflight evaluation and examination of Mr. Baillie during which he used a stethoscope and sphygmomanometer provided by British Airways to check Mr. Baillie's blood pressure and pulse and determined that Mr. Baillie was experiencing "crackles" in the left side of his chest.

21.    "Crackles" are a clicking or rattling sound associated with pulmonary stress and difficulty related to diminished oxygenation of lung tissues and are evidence of pulmonary edema or fluid in the lungs.  Crackles, along with chest pain like that experienced by Mr. Baillie, can indicate that a patient is having a complicated heart attack and that he or she is very sick and in need of prompt medical intervention requiring an in-flight diversion for medical intervention.

22.    At this point of the subject flight, approximately three and one-half hours after Mr. Baillie boarded the subject aircraft, it was medically clear that Mr. Baillie was experiencing a complex heart and lung medical emergency, that approximately seven hours of flight time remained in respect to continuing to the flight's final destination of Phoenix and that Mr. Baillie would have to endure significant pain and consequent injury unless the flight was diverted to an en route facility to allow him to receive emergency medical treatment in a hospital.

23.    Rather than recognize the high likelihood of an emergency situation and

10

consequent injuries and respond to the need for prompt medical intervention and diversion of the flight, defendant MedAire, through its agents, including defendant Reinhart, failed to provide appropriate medical assessment, advice, guidance, consultation, instructions or options and asked the cabin attendants whether the "onboard physicians had any ideas or suggestions."

24.    At approximately 19:12 GMT, the cabin crew initiated a second telephonic contact (the "second phone patch) with defendants MedAire and Reinhart and reported to them that the onboard physician had determined that Mr. Baillie had an elevated, irregular pulse of 100 beats per minute, that his blood pressure was 100/70 (mm of hg), that his appearance was pale, that the onboard physician had heard crackles in Mr. Baillie's left hand side, that Mr. Baillie still had chest pain and that he was confused; the response of defendants MedAire and Reinhart was to acknowledge that the patient's blood pressure was too low for Nitroglycerin and instructed the BA Flight 289 crew that "there is not a great deal more we can do other than continuing the supplemental oxygen" and failed to direct or even suggest or evaluate a diversion; further, rather than provide appropriate medical assessment, advice, guidance, instruction, consultation and options, defendants MedAire and Reinhart inquired of the crew: "Did the physician onboard have any further suggestions after his evaluation?"

25.    Since the onboard physician did not have any "further suggestions," Reinhart negligently directed the BA Flight 289 crew to "proceed on then to your destination," meaning Phoenix, Arizona, acknowledging that the flight had over six hours

remaining and that "a lot can obviously happen in that time frame.   Hopefully his condition will improve."   Defendant Reinhart negligently continued, "if his condition appears to deteriorate, call us back and we will have to consider a diversion at that point," but failed to recognize the present need for a diversion and failed to appropriately exercise control of the flight concerning a gravely ill passenger.

26.   At approximately 22:34 GMT, over three hours following the second phone patch, Mr. Baillie's medical condition continued to worsen because he did not get appropriate treatment and British Airways once again called defendants MedAire for an additional medical assessment as well as advice, guidance, instructions and options; at this point, however, defendant Reinhart had "gone off shift," and despite his earlier expressed concerns, he and defendant MedAire and its agents had also failed to take any appropriate measures to facilitate an appropriate turn-over of patient information for this ongoing inflight emergency to another MedAire physician in the event that Mr. Baillie's "condition appear[ed] to deteriorate;" furthermore, the MedAire communication specialist employed by MedAire to record the first and second phone patches, the prior air to ground communications and patient history concerning Mr. Baillie failed to completely and accurately record the relevant information and recent history disclosed by British Airways and exchanged between British Airways and defendants in the first and second telephone patches so that this important history could be provided quickly and thoroughly to any subsequent MedAire physician.

27.   At 22:38 GMT, a second MedAire physician, defendant Jessica Monas,

M.D., responded to the third telephone request for medical assistance, assessment, guidance, consultation, instructions and options for Mr. Baillie by the British Airways crew and was briefed on the problem and history related to Mr. Baillie's chest pain, difficulty breathing, paleness, crackles, blood pressure, pulse, confusion, sweating and worsening condition; said second MedAire physician, defendant Monas, also failed to recognize the emergency nature of passenger Baillie's condition and again inappropriately instructed British Airways to provide Mr. Baillie with medication in the form of Nitroglycerin, which the onboard physician had previously rejected as a treatment option because of Mr. Baillie's low blood pressure and which medication was improper as it should only be used for treating angina as distinct from heart attack or myocardial infarction, the former involving narrowing of coronary arteries and the latter involving blockage and the total deprivation of oxygen to cardiac tissue and closure of coronary arteries and death to cardiac cells; further, defendants again failed to recognize and instruct British Airways that by then its passenger Mr. Baillie was *in extremis* and in need of medical intervention as soon as possible, and that the flight needed to be diverted to the nearest appropriate medical facility as had been indicated by defendant Reinhart in his second phone patch, but which assessment was not communicated to defendant Monas by defendants Reinhart and MedAire or its communication specialist.

28.     Each and all of these several failures to assess, recognize and respond appropriately to Mr. Baillie's worsening and consequent injury to Baillie's heart and deteriorating medical emergency condition by defendants MedAire, its agents, Reinhart

13

and Monas constituted an actionable accident within the meaning of the Montreal Convention and domestic law.

29.     Under the direction of defendants MedAire, Reinhart and Monas, British Airways Flight 289 continued to Phoenix without making a flight diversion and landed 10 hours and 41 minutes after takeoff from London.  Mr. Baillie was taken off the subject flight by emergency medical technicians and provided with emergency medical treatment at St. Luke's Hospital in Phoenix, which confirmed that Mr. Baillie had suffered a heart attack at least six to eight hours earlier; the medical intervention at St. Lukes Hospital opened the clogged and closed coronary arteries related to the heart attack, thereby allowing blood flow to be returned to Mr. Baillie's heart; however, this medical procedure was performed nearly six to eight hours after his heart had initially experienced damage related to lack of blood flow and continued for six or seven hours or more, progressively and critically injuring Baillie's heart; consequently, Mr. Baillie's heart was too badly injured and damaged by the end of the flight to enable Mr. Baillie to have a full recovery, and after eventually being transferred to The Mayo Clinic in Phoenix and placed on a heart transplant waiting list, Mr. Baillie died on July 1, 2012.

30.     Based on each of the aforementioned deficient medical assessments, and failure to provide adequate guidance, instructions, assessment, advice, consultations and options concerning Mr. Baillie's inflight medical emergency by defendants MedAire, its agents, Reinhart and Monas, and all of them in combination, and defendant MedAire's failure to exercise its control of the subject flight by failing to appropriately assess, guide,

instruct, advise, consult and recommend options and instructions needed to respond to Mr. Baillie's emergency, Mr. Baillie sustained serious and grievous injuries because he failed to receive usual, expected, adequate and proper treatment for his medical emergency; instead James Donald Baillie, II, who at the relevant time was experiencing or had begun to experience an emergency in-flight heart attack, required prompt intervention and treatment and a diversion of the subject flight, and when defendants failed to make adequate provisions for his emergency inflight medical condition, defendants and each of them caused Mr. Baillie to remain untreated for over six hours and to sustain life threatening and ultimately fatal injuries on board the subject flight due to the unusual and unexpected failure of defendants MedAire, its agents, Reinhart and Monas to provide appropriate medical assessment and care, and instead elected to attempt to save the economic costs related to a flight diversion.

31.     As set forth herein, defendants MedAire, its agents, Reinhart and Monas negligently failed to provide adequate and appropriate medical assessment, advice, information, instructions and treatment options for Mr. Baillie to British Airways causing Mr. Baillie to sustain severely aggravated personal injuries and ultimately fatal injuries to his body and these failures by defendants MedAire, its agents, Reinhart and Monas constitute an accident within the meaning of the Montreal Convention and are otherwise actionable.

32.     At all times mentioned herein, the accident suffered by James Donald Baillie, II, on the subject flight was an unusual and unexpected event or happening

external to James Donald Baillie, II and was a link in the chain of causation which ultimately resulted in his death, and defendants MedAire, its agents, Reinhart and Monas are therefore liable under the applicable provisions of the Montreal Convention and otherwise for all damages sustained by James Donald Baillie, II, his wife, plaintiff Linda Ann Baillie, his Estate and his heirs and next of kin as a result of said accident.

33.   As a result of said accident, the plaintiff's decedent James Donald Baillie, II suffered serious and permanent physical and emotional injuries and other damages, including past and future physical and mental pain and suffering, physical limitations and loss of enjoyment of life and life's activities, medical care expenses of approximately $1.9 Million, past and future loss of income and damage to his business activities, and other compensable injuries, and plaintiff Linda Ann Baillie, the Estate of James Donald Baillie, II and all heirs and next-of-kin of James Donald Baillie, II are entitled to recover just and reasonable compensation from the defendants for said injuries and losses.

34.   Defendants MedAire, its agents, Reinhart and Monas are liable to plaintiff Linda Ann Baillie, the Estate of James Donald Baillie, II, and all heirs and next-of-kin of James Donald Baillie, II for all proven damages without limitation, because: (a) plaintiff's decedent experienced an accident on board the subject flight under the Montreal Convention; (b) defendants, and each of them, had a duty to provide careful, knowledgeable, prudent and informed advice, assessment, guidance, consultation, instructions and options to British Airways concerning Mr. Baillie's emergency medical condition and the need for timely and appropriate medical attention and intervention, but

failed to do so; (c) defendants, and each of them, failed to properly assess or recognize the nature and extent of Plaintiff's decedent's medical emergency condition; (d) defendants, and each of them, failed to provide adequate and appropriate assessment, advice, guidance, instructions, options and treatment and failed to provide appropriate care and advice to Plaintiff's decedent as warranted by the circumstances presented; and, (e) defendants committed other wrongful acts or omissions through their servants or agents.

35.    As a result of the foregoing, defendants MedAire, Reinhart and Monas, and each of them, are jointly and severally liable to plaintiff Linda Ann Baillie, the Estate of James Donald Baillie, II, and all heirs and next-of-kin of James Donald Baillie, II for all of compensatory damages proven without limitation, in an amount to be determined by the jury.

## SECOND CAUSE OF ACTION FOR DAMAGES
## AGAINST DEFENDANTS MEDAIRE, REINHART AND MONAS
## BY PLAINTIFF LINDA ANN BAILLIE

36.    Plaintiff Linda Ann Baillie reasserts each and every allegation of paragraphs 1 through 35 above, with the same force and effect as if each was more fully set forth herein at length.

37.    On March 23, 2012, plaintiff Linda Ann Baillie was the legal spouse of plaintiff's decedent James Donald Baillie, II and plaintiff Linda Ann Baillie was and is entitled to her husband's services, society, consortium, support, maintenance and care and the enjoyment of her marital relationship with plaintiff's decedent James Donald

17

Baillie, II.

38.     As a proximate result of said accident and injuries to plaintiff's decedent James Donald Baillie, II, plaintiff Linda Ann Baillie suffered past and future compensatory damages, through her loss of her husband's services, society, consortium, support, maintenance and care; his provision of care, assistance and medical expenses for her as her husband; and, her loss of enjoyment of her marital relationship with plaintiff's decedent James Donald Baillie, II.

39.     As a result of the foregoing, defendants MedAire, Reinhart and Monas, and each of them, are liable to pay plaintiff Linda Ann Baillie all of her compensatory damages without limitation, in an amount to be determined by the jury.

**WHEREFORE**, LINDA ANN BAILLIE, Individually, and as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, deceased, and on behalf of all heirs and next of kin of JAMES DONALD BAILLIE, II, deceased, including James Donald Baillie, III, Jacob Edward Baillie, Jonathan David Baillie and Laura Marie Baillie, demands judgment against defendants and each of them on their First and Second Causes of Action, and demands compensatory damages in an amount to be determined by the jury, plus fees, interest and costs, and for such other further relief as this Court deems just, proper and equitable.

18

1
2

### JURY DEMAND

3
4

Plaintiffs hereby demand a trial by jury.

5

RESPECTFULLY SUBMITTED this 27th day of January, 2015.

6
7

KREINDLER & KREINDLER LLP

8

By: */s/ Francis G. Fleming*

9

Francis G. Fleming, 004375

10
11

CHRISTIAN DICHTER & SLUGA, P.C.

12

By*/s/ Stephen M. Dichter*

13

Stephen M. Dichter, 004043

14

*Attorneys for Plaintiff Linda Ann Baillie*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

19

1

## CERTIFICATE OF SERVICE

2

3       I hereby certify that on January 27, 2015, I electronically transmitted the attached

4   document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

5   Notice of Electronic Filing to the following CM/ECF registrants:

6

Mark C. Dangerfield
7   Wm. Charles Thomson
    Gallagher & Kennedy, P.A.
8   2575 East Camelback Road
9   Phoenix, Arizona 85016-9225
    mark.dangerfield@gknet.com
10  wct@gknet.com

11
*Attorneys for Defendants MedAire, Inc.; Steven Joe Reinhart, D.O.;*
12   *and Jessica Monas, M.D.*

13                                              /s/  *Francis G. Fleming*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH AND PERSONAL INJURIES,
NEGLIGENCE, FAILURE TO INFORM AND LOSS OF CONSORTIUM