Mark C. Dangerfield (Bar No. 010832)
Wm. Charles Thomson (Bar No. 004269)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
E-mails: mark.dangerfield@gknet.com
         wct@gknet.com
Attorneys for Defendants MedAire, Inc., Steven
Joe Reinhart, D.O., and Jessica Monas, M.D.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LINDA ANN BAILLIE, individually, as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, and on behalf of all heirs and next of kin of JAMES DONALD BAILLIE, II, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>MEDAIRE, INC.; STEVEN JOE REINHART, D.O.; JESSICA MONAS, M.D.,<br><br>Defendants. | No. 2:14-cv-00420-SMM<br><br>**MEMORANDUM ON SUBJECT MATTER JURISDICTION UNDER THE MONTREAL CONVENTION**[1] |

As directed by the Court's October 22, 2015 Order (Dkt. 65), this Memorandum discusses why subject matter jurisdiction exists under what is commonly called the Montreal Convention.[2] The Montreal Convention (the "Convention") is an international treaty ratified by the United States, and hence part of federal law over which the Court has subject matter jurisdiction. *See* U.S. Const., Art. VI, Cl. 2. The Convention is the successor to the Warsaw Convention, which was in force from 1929 until 1999. The Court's 10/22/15 Order suggests that subject matter jurisdiction may be lacking because

---

[1] Defendants originally moved to file this Memorandum under seal. In its 11/24/15 Order (Dkt. 72), the Court denied that motion without prejudice, and ordered Defendants to refile the motion "in a manner consistent with Local Rule 5.6 and applicable Ninth Circuit precedent." *Id.* at 4. After further review, Defendants have elected instead to modify the Memorandum to remove any reference to confidential documents.

[2] Convention for the Unification of Certain Rules for International Carriage by Air, Done at Montreal on 28 May 1999, ICAO Doc. No. 9750 (entered into force Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734. A copy of the Montreal Convention is attached as **Ex. 1**.

the Convention "seems to apply only to foreign air carriers and their agents," and the defendants are neither.

In fact, though, the Convention's provisions are not limited to foreign air carriers and their agents. Rather, the Convention "applies to *all* international carriage of persons, baggage or cargo performed by aircraft for reward." Convention, Art. 1 (emphasis added). Courts thus hold that federal subject matter jurisdiction exists for any damage claim arising out of a defendant's actions which assist in the international carriage of passengers. The defendants' actions at issue here meet this test. *McCaskey v. Continental Airlines, Inc.*, 159 F. Supp. 2d 562, 580 (S.D. Texas 2001) (finding subject matter jurisdiction because MedAire's services were "in furtherance of the contract of carriage").

## I. THE CONVENTION PROVIDES A CAUSE OF ACTION NOT ONLY AS TO AIR CARRIERS, BUT FOR SERVICES GIVEN IN FURTHERANCE OF THE CONTRACT OF CARRIAGE ON AN INTERNATIONAL FLIGHT.

Article 1 of the Convention states that the Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward."[3] Article 17 of the Convention then imposes liability on a "carrier" involved in the international carriage of passengers:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course any of the operations of embarking or disembarking.

Notably, this clause is very similar to Article 17 of the Warsaw Convention, set out in the footnote,[4] and courts hold that case law interpreting the Warsaw Convention should be followed in interpreting similar clauses found in the Montreal Convention. *E.g. Kruger v. United Air Lines, Inc.*, 2007 WL 3232443, *3 (N.D. Calif. 2007) ("courts interpreting the Montreal Convention routinely rely on existing case law under the Warsaw Convention interpreting similar provisions.").

---

[3] Note that this is almost identical to Article 1 of the Warsaw Convention: "This Convention applies to all international carriage of persons, luggage or goods performed by aircraft for reward."

[4] "The carrier is liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

The Convention, however, does not define "carrier," which "initially left open the question of whether employees and/or contractors providing services for a 'carrier' fell within the Convention's scope." *McCaskey*, 159 F. Supp. 2d at 578-579. So in *Reed v. Wiser*, 555 F.2d 1079, 1092 (2d Cir. 1977), the Second Circuit addressed this issue, and held that the term "carrier" includes an airline's employees. Part of the *Reed* court's reasoning was that, absent such a broader view of "carrier," an injured plaintiff could circumvent the Convention's liability limitations by suing airline employees directly. Employees would demand indemnity from the airlines, and airlines would thereby incur "precisely the sort of unpredictable, unlimited liability that the Convention sought to curtail." *McCaskey*, 159 F. Supp. 2d at 579.

Following the *Reed* decision, "virtually all courts have recognized that, in at least some instances, independent contractors are covered by the Convention." *Id.*; *see e.g. Croucher v. Worldwide Flight Services, Inc.*, 111 F. Supp. 2d 501, 504-505 (D.N.J. 2000) ("Subsequent cases have extended the liability limitations of the Convention to air carriers' agents, contractors, and even subcontractors who perform services that otherwise would have to be provided by the carriers and are in furtherance of the contract of carriage."). And although courts have applied different standards "for determining whether a contractor's services fall within the Convention," most courts find that "a contractor is also covered by the Convention if its services are provided in furtherance of the contract of carriage." *McCaskey*, 159 F. Supp. 2d at 579.

In *McCaskey*, the court found that a "service is performed in furtherance of the contract of carriage if it is "flight related." 159 F. Supp. 2d at 580. Thus, as to MedAire:

> The Court holds that MedAire's services, which included providing medical advice, aiding the crew in deciding whether to divert, suggesting appropriate airports for a diversion when needed, and arranging necessary medical care at the arrival gate, are given in furtherance of the contract of carriage.

159 F. Supp. 2d. at 580.

/ / /

In *Dazo v. Globe Airport Security Services*, 295 F.3d 934, 939 (9th Cir. 2002), the Ninth Circuit first considered the interpretation of "carrier" under Article 17 of the Warsaw Convention. The Ninth Circuit there found that the defendant's pre-flight security screening services for all passengers, domestic and foreign, were not covered by the Convention because they "were not in furtherance of the contract of carriage of an international flight," but were rather:

> basic airport security services required at all airports by domestic federal law, regardless of the flight's destination and regardless, in fact, of whether the person being screened was even a passenger.

*Dazo*, 295 F.3d at 939. The court found such security screening to be "part of a national program wholly independent of the Warsaw Convention." *Id.*, n. 3.

## II. MEDAIRE'S SERVICES WERE PROVIDED IN FURTHERANCE OF A CONTRACT OF INTERNATIONAL CARRIAGE.

In contrast with *Dazo*, the services MedAire provided to British Airways Flight 289 in this case were indeed "in furtherance of the contract of carriage of an international flight," and hence covered by the Convention. This case concerns Mr. James Baillie, who purchased a "ticket contract" from British Airways ("BA") to travel on a March 23, 2012 international flight from London to Phoenix, BA Flight 289. First Amended Complaint, Dkt. 45 ("FAC"), ¶¶ 7, 11. After rushing to catch BA Flight 289, Mr. Baillie experienced chest pain and shortness of breath, and upon boarding the plane he told a member of the BA cabin crew that he did not feel well. FAC ¶ 11; Answer to FAC, Dkt. 49, ¶ 11.

BA has a duty to ensure "that there are adequate measures in place to deal with any unforeseen in-flight medical emergency." IATA Medical Manual, § 1.2, May 2013, excerpts attached at **Ex. 2**.[5] To help fulfill that duty, BA had contracted with MedAire to provide remote medical advisory services. Answer to FAC, ¶ 9. When the pilot of BA Flight 289 thus called MedAire via satellite phone three hours after takeoff, FAC ¶ 16,

---

[5] BA is a member of IATA, the International Air Transport Association. *See* http://www.iata.org/about/members/Pages/airline-list.aspx. In resolving a jurisdictional challenge, the Court may review evidence beyond the complaint. *E.g. Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

MedAire arranged for Dr. Reinhart, and later Dr. Monas—both emergency room physicians employed by Emergency Professional Services—to consult with members of the BA flight and cabin crew about Mr. Baillie. FAC and Answer to FAC, ¶¶ 13, 16, 27. Plaintiff alleges that Drs. Reinhart and Monas should have, but failed to, recommend that the flight be diverted to an earlier landing site to enable Mr. Baillie to receive emergency medical attention. FAC, ¶¶ 16, 27. Of course, "the ultimate diversion decision remains with the Captain, who also must account for fuel, weather, safety of landing site, and other operational factors beside the emergency." **Ex. 2**, ¶ 6.2.3. Ultimately, the pilot of BA Flight 289 decided to continue to Phoenix and not divert the plane to an earlier landing site. FAC, ¶ 29; Answer to FAC, ¶ 29.

It is undisputed that the services MedAire and the defendant physicians provided to BA Flight 289 were "flight-related," and those services were intended to assist BA in BA's duty to care for the safety of its passengers, including Mr. Baillie. As such, MedAire's services were in furtherance of the contract of carriage, and hence covered by the Convention.

## CONCLUSION

For all the reasons set forth above, the Court should find that it has subject matter jurisdiction in this case, despite the dismissal of BA.

RESPECTFULLY submitted this 3rd day of December, 2015.

GALLAGHER & KENNEDY, P.A.

By: */s/ Mark C. Dangerfield*
   Mark C. Dangerfield
   Wm. Charles Thomson
   2575 East Camelback Road
   Phoenix, Arizona  85016-9225
   Attorneys for Defendants MedAire, Inc.;
   Steven Joe Reinhart, D.O.; and Jessica
   Monas, M.D.

5

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of December, 2015, a copy of the foregoing document was filed electronically via the Court's CM/ECF system and Notice of Electronic Filing served on all parties by operation of the Court's CM/ECF system.

Stephen M. Dichter, Esq. (sdichter@cdslawfirm.com)
Jeffrey O. Hutchins, Esq. (jhutchins@cdslawfirm.com
Christian Dichter & Sluga, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, AZ  85004
*Attorneys for Plaintiff*

Francis G. Fleming, Esq. (ffleming@kreindler.com)
Robert J. Spragg, Esq. (rspragg@kreindler.com)
Kreindler & Kreindler LLP
750 Third Avenue
New York, NY  10017
*Attorneys for Plaintiff*

By: */s/ Candice J. Cromer*