WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| Linda Ann Baillie, | No. CV-14-00420-PHX-SMM |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Medaire Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants Drs. Steven Joe Reinhart's and Jessica Monas' ("Defendants") Rule 12(c) Motion for Judgment on the Pleadings as to Defendants Steven Joe Reinhart, D.O. and Jessica Monas, M.D. (Doc. 57.) Plaintiff Linda Ann Baillie has responded and the matter is fully briefed. Having reviewed the briefing, the Court will deny the motion.[1]

**I. BACKGROUND**

Plaintiff Linda Ann Baillie is the widow of James Donald Baillie, II, and the personal representative of his estate. (Doc. 45 at ¶ 6.) On March 23, 2012, Mr. Baillie was a passenger on British Airways Flight 289 from London to Phoenix. (Id. at ¶¶ 1, 6, 7, 11, 15.) Mr. Baillie hurried to catch this flight, and upon boarding the aircraft experienced chest pain and shortness of breath. (Id. at ¶ 11.) Mr. Baillie reported this to

---

[1] Plaintiff's request for oral argument is denied because the parties have had an adequate opportunity to present their written arguments, and oral argument will not aid the Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d 724, 729 (9th Cir. 1991).

the British Airways cabin crew. (Id.) The flight took off and Mr. Baillie continued to complain of having difficulty breathing and central chest pain. (Id.) The crewmembers gave Mr. Baillie oxygen and aspirin, but his condition did not stabilize or improve. (Id.)

Three hours after takeoff, the crew, following British Airways procedures, contacted Defendant MedAire to seek medical advice and consultation for Mr. Baillie because his condition was continually worsening. (Id. at ¶¶ 16, 18.) British Airways contracts with MedAire to provide medical advice in the event of in-flight medical emergencies. (Id. at ¶¶ 4, 9.) Medaire employs physicians who, based upon the information provided to them, assess the medical situation from afar. MedAire then makes recommendations to the flight crew regarding care of the ill traveler and possible flight diversions. (Id.) At the time the Flight 289 crewmembers contacted MedAire, Defendant Dr. Reinhart was the doctor on duty. (Id. at ¶¶ 16, 18.)

Upon hearing Mr. Baillie's symptoms, Dr. Reinhart instructed the crewmembers to attempt to find a physician on board, which they were able to do. (Id. at ¶19.) Dr. Reinhart directed crewmembers and this physician to administer nitroglycerin if Mr. Baillie's vitals stabilized, and to call him back at that point. (Id.) Dr. Reinhart did not direct the crew to make a flight diversion so that Mr. Baillie could receive more thorough, on-ground aide. (Id. at ¶ 23.)

Following Dr. Reinhart's instructions, the physician on board the flight assessed Mr. Baillie's blood pressure and pulse and determined that Mr. Baillie was experiencing "crackles"[2] in his left chest. (Id. at ¶¶ 20-21). Approximately thirty minutes after the first call to Dr. Reinhart, the crew called back and reported the physician's findings. (Id. at ¶ 24.) Dr. Reinhart determined that Mr. Baillie's blood pressure was too low to administer nitroglycerine. (Id.) He directed the crew to keep administering oxygen and to continue monitoring Mr. Baillie's condition as they proceeded to their destination in Phoenix. (Id.) Dr. Reinhart told the crew to call him back if Mr. Baillie's condition deteriorated, in

---

[2] Crackles are clicking or rattling sound associated with pulmonary stress. Accompanied with chest pain, this symptom can indicate a complicated heart attack. (Doc. 45 at ¶¶ 20-21.)

which case they would consider a diversion. (Id.)

Three hours later, Mr. Baillie's condition had not improved so the crew called MedAire for a third time. (Id. at ¶ 26.) At this point, Dr. Reinhart had gone off- shift, and the doctor on duty was Defendant Dr. Monas. (Id. at ¶ 27.) Upon the crew relating Mr. Baillie's present medical condition, Dr. Monas directed them to administer nitroglycerin, in contradiction to Dr. Reinhart's previous assessment. (Id.)  Dr. Monas did not recommend a flight diversion, and the flight continued to land in Phoenix ten hours and forty-one minutes after takeoff from London. (Id. at ¶ 29.)

Mr. Baillie was taken off Flight 289 by emergency medical technicians and rushed to St. Luke's Hospital in Phoenix, where it was determined that he had suffered a heart attack six to eight hours earlier. (Id. at ¶ 29.) This delay caused significant coronary damage that Mr. Baillie was unable to recover from. (Id.) He passed away on July 1, 2012, while awaiting a heart transplant. (Id.)

## II. STANDARD OF REVIEW

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." Fajardo v. County of L.A., 179 F.3d 698, 699 (9th Cir. 1998); see Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 955 (9th Cir. 2004) (stating that in ruling on a Rule 12(c) motion the court must accept as true all allegations in the plaintiff's complaint and treat as false the allegations in the defendant's answer that contradict the plaintiff's allegations). In other words, dismissal pursuant to Rule 12(c) is inappropriate if the facts as pled would entitle the plaintiff to a remedy. Merchants Home Delivery Serv., Inc. v. Hall & Co., 50 F.3d 1486, 1488 (9th Cir. 1995). "Federal courts generally hesitate to grant judgment on the pleadings, because 'hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense.'" Carrasco v. Fiore Enters., 985 F. Supp. 931, 934 (D. Ariz. 1997) (quoting 5A Charles A.

Wright & Arthur R. Miller, Federal Practice and Procedure, Civil 2d § 1368 (1990)).

**III. DISCUSSION**

Initially the Court questioned whether it even had subject matter jurisdiction over this matter because the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309 ("Montreal Convention"),[3] which Plaintiff asserts provides a jurisdictional basis, appeared to only apply to foreign air carriers, not doctors or medical companies. The Court, therefore, asked the parties to provide it with supplemental briefing on the issue, which they provided. (Doc. 65.) After reviewing the supplemental briefs and decisions of neighboring courts, the Court finds that the Montreal Convention is applicable in the present situation. Many courts, in whose footsteps this Court will follow, broadly construe the Montreal Convention to cover services made "in furtherance of the contract of carriage of an international flight." McGasky v. Continental Airlines, Inc., 159 F.Supp.2d 562, 580 (S.D. Texas 2001); See, e.g., Waxman v. C.I.S. Mexicana De Aviacion, 13 F.Supp.2d 508, 515 (S.D.N.Y. 1998) (Warsaw Convention applies to cleaning services subcontractor); Kabbani v. Int'l Total Servs., 805 F.Supp. 1033, 1039 (D.D.C. 1992) (Warsaw Convention applies to independent contractor providing security services sued by passenger whose carry-on bag was stolen). The Court finds that although Defendants are not foreign air carriers, their contractual relationship with British Airways, wherein they agree to provide on-board medical advice and aid in deciding whether to divert flights, exists solely to facilitate British Airways' contracts of carriage. Therefore, the Montreal Convention applies and provides the Court a jurisdictional basis to hear this lawsuit.

In viewing the allegations in Plaintiff's complaint as true, the Court simply cannot

---

[3] The Montreal Convention modernized and replaced the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 30000 (1934), reprinted in 49 U.S.C. § 1502 (1976) ("Warsaw Act"). Similarly situated courts have used case law interpreting the Warsaw Act to interpret similar provisions in the Montreal Convention. See, e.g., Kruger v. United Air Lines, Inc., 2007 WL 3232443, *3 (N.D. Cal. 2007); Baah v. Virgin Atlantic Airways, 473 F.Supp.2d 591, 596-97 (S.D.N.Y. 2007).

find that Defendants are entitled to judgment as a matter of law. Plaintiff pleads that Defendants "negligently failed to provide adequate and appropriate medical assessment, advice, information, instructions and treatment options for [Mr. Baillie]… causing [him] to sustain severely aggravated personal injuries and ultimately fatal injuries to his body and these failures… constitute an accident within the meaning of the Montreal Convention and are otherwise actionable. (Doc. 45 at ¶31.) If accepted as true, which the Court must do in considering this motion, these allegations certainly indicate that Plaintiff would be entitled to a remedy. As such, Defendants are not entitled to judgment as a matter of law.

Furthermore, contrary to Defendants' assertions, the Aviation Medical Assistance Act of 1998, Pub. L. No. 105-170, 112 Stat. 47, is inapplicable here.  Defendants make much ado about Section 5(b) of the Act entitled "Liability of Individuals," which provides:

> An individual shall not be liable for damages in any action brought in a Federal or State court arising out of the acts or omissions of the individual in providing or attempting to provide assistance in the case of an in-flight medical emergency unless the individual, while rendering such assistance, is guilty of gross negligence or willful misconduct.

Pub. L. No. 105-170, § 5(b). Defendants argue the Act immunizes them from suit, as they are protected "individuals" and Plaintiff's complaint does not allege they were grossly negligent or acted with willful misconduct. (Doc. 57 at 4.) The Court finds that the Act does not apply in the present situation for the following reasons. First, section 5(b) is a "Good Samaritan" provision enacted to protect individuals from liability who attempt to provide aid during an in-flight medical emergency.[4] Defendants are not volunteers as

---

[4] The bill's sponsor explained the "Good Samaritan provision… would protect from legal liability the Good Samaritan, such as the doctor on board the flight who volunteers to help in a medical emergency. When a medical emergency happens during flight, the flight crew must often rely on the help of passengers who are medical professionals." 144 Cong. Rec. H1403-03, 1998 WL 129723. Furthermore, the Committee Report for the Act provides, "The provision protects an individual (such as a passenger, pilot or flight attendant) from legal liability for helping in a medical emergency unless that individual is guilty of gross negligence or willful misconduct." H.R. 105-456, 2nd Sess. 1998, 1998 WL 125038, *6 (March 20, 1998).

- 5 -

contemplated by the Act, nor were they even on the airplane during Mr. Baillie's health crisis. Rather, Defendants are employees of a company that airlines hire to provide medical advice during in-flight medical emergencies. This contractual relationship is fundamentally different than those that section 5(b) contemplates. For clarification, here the individuals that would be immune from liability under the Act are the crewmembers and the physician who provided aide to Mr. Baillie while in the air, not Defendants.

## IV. CONCLUSION

For the reasons set forth above, Defendants are not entitled to judgment as a matter of law at this stage in the litigation. Accordingly,

**IT IS HEREBY ORDERED denying** Defendants' Rule 12(c) Motion for Judgment on the Pleadings as to Defendants Steven Joe Reinhart, D.O. and Jessica Monas, M.D. (Doc. 57.)

Dated this 8th day of December, 2015.

Honorable Stephen M. McNamee
Senior United States District Judge