# Exhibit B

# Exhibit B

United States District Court
Southern District of Texas
**ENTERED**
March 03, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS J. BINTZ, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 4:13-0566 |
| | § | |
| CONTINENTAL AIRLINES, INC., et al., | § | |
| | § | |
| Defendants | § | |

### ORDER

Pending before the Court are Defendants Emergency Professional Services ("EPS") and MedAire's Motion for Summary Judgment (**Instrument No. 56**), and Defendants Continental Airlines and United Continental Holdings' Motion for Summary Judgment (**Instrument No. 69**).

### I.

### A.

Plaintiff Tom Bintz ("Mr. Bintz") claims that when he suffered a heart attack on a plane operated by Defendant Continental Airlines, the crew and the providers of in-flight emergency medical services, MedAire and EPS, failed to either divert the plane or otherwise appropriately respond to the medical emergency. Defendants EPS and MedAire ("Medlink Defendants") and Defendants Continental Airlines and United Continental Holdings ("Continental Defendants") (collectively "Defendants") argue that any claim based on the actions of the Continental or Medlink Defendants fails as a matter of law because their response to the in-flight emergency does not qualify as an "accident" under the Montreal Convention. Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, 1999 WI 33292734 ("Montreal Convention"). Plaintiff argues that there exist issues of material fact as to whether Defendants'

actions constitute an "accident" as defined by the U.S. Supreme Court in *Air France v. Saks*, 470 U.S. 392, 405-06 (1985).

**B.**

MedAire provides a service called MedLink to commercial airlines, wherein flight crew can speak directly to medical professionals in the event of an in-flight emergency. (Instrument No. 21-2, at 6-7, 19). MedAire's MedLink service depends almost exclusively on physicians employed by EPS. *Id.* at 7. Under this arrangement, a flight crew can call the airline's dispatch or the MedLink number directly during an emergency, speak to an operator at MedAire, and be connected to an EPS physician to address the emergency. *Id.* at 16-19.

On April 1, 2011, Mr. Bintz was flying from Vancouver, Canada to Houston, Texas on Continental Flight 288. (Instrument No. 21-4 at 5). While on the flight, Mr. Bintz began to experience chest pains and cough up blood. (Instrument No. 21-4 at 5). The captain on the flight called dispatch and was connected to MedLink in order to report the situation and receive medical advice. (Instrument No. 21-4 at 5). The captain was connected to Dr. Boothe, a physician at EPS, during the emergency. *Id.* Due to Mr. Bintz's history of acid reflux, Dr. Boothe recommended that he be given an aspirin, an antacid, and oxygen. *Id.* The flight crew followed the instructions, but noted that Mr. Bintz's condition worsened and that he appeared pale. *Id.* at 6. The crew then gave Mr. Bintz a nitroglycerine pill and the captain called MedLink for a second time. *Id.* During this call, Dr. Boothe recommended that the crew continue to administer nitroglycerine pills and oxygen. *Id.* Dr. Boothe also asked that the crew take Mr. Bintz's blood pressure and identified that it was normal. *Id.* At this time, Lynne Blackwell, a cardiac nurse who was also a passenger on the flight, identified the symptoms as indicative of a heart attack and recommended that the flight be diverted. (Instruments No. 21-1 at 2; No. 21-4 at 6). The captain

2

relayed this information to Dr. Boothe, but because Dr. Boothe found that Mr. Bintz's vital signs were normal, she stated that she did not "necessarily recommend diversion at this time." (Instrument No. 21-4 at 6). The captain called MedLink two more times to provide updates and to report additional medical history of Mr. Bintz. *Id.* at 7-8. In both cases, Dr. Boothe recommended that the crew keep treating Mr. Bintz as previously instructed, and that the flight should continue to its destination. *Id.* Mr. Bintz has testified that, upon landing in Houston, he was taken to a hospital where doctors confirmed that he had suffered a major heart attack and permanent damage to his heart. (Instrument No. 21-1 at 1).

## C.

Plaintiffs Mr. Bintz and Jane Bintz ("Mrs. Bintz") (collectively "Plaintiffs") filed this suit on February 7, 2013, against Continental, United Continental Holdings, Inc., and MedAire in the 61st District Court of Harris County, Texas. (Instrument No. 1-2). Plaintiffs brought claims for negligence, common carrier negligence, and breach of contract. *Id.* at 7-8. Plaintiffs argued that Mr. Bintz suffered severe and permanent damage to his heart as a result of the airline's and the medical providers' failure to divert the plane or otherwise appropriately address his medical emergency. *Id.* The Continental Defendants filed to remove the case to the Southern District of Texas under this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1441(b) on March 1, 2013. (Instrument No. 1). Plaintiffs joined EPS as a Defendant in this case on March 28, 2013. (Instrument No. 7).

EPS filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction on April 30, 2013. (Instrument No. 12). The Court granted Plaintiffs a continuance to conduct jurisdictional discovery related to EPS' motion to dismiss, and Plaintiffs filed a response on September 4, 2013. (Instruments No. 15; No. 21). On September

13, 2013, EPS filed a reply to Plaintiffs' response, and Plaintiffs filed a surreply on September 23, 2013. (Instruments No. 22; No. 25).

MedAire filed a motion to dismiss on August 29, 2013, arguing that Plaintiffs had failed to timely serve an expert report as required by Texas Civil Practice and Remedies Code § 74.351. (Instrument No. 20). Plaintiffs filed a response to the MedAire's motion to dismiss on September 18, 2013. (Instrument No. 23). On December 12, 2013, this Court denied each of the Medlink Defendants' Motions to Dismiss, finding that the Court had specific jurisdiction and that the Texas rule at issue did not apply in Federal Court. (Instrument No. 26).

On May 13, 2014, the Medlink Defendants filed a motion for summary judgment on Plaintiffs' claims for negligence, common carrier negligence, and breach of contract. (Instrument No. 30). On June 9, 2014, Plaintiffs filed a Reponse to the Medlink Defendants' motion for summary judgment and a motion for leave to amend their pleadings. (Instrument No. 34). On July 25, 2014, this Court denied the Medlink Defendants' motion for summary judgment, and granted Plaintiffs' motion for leave to amend their pleadings. (Instrument No. 36).

On July 25, 2014, Plaintiffs filed their Second Amended Complaint, repleading their negligence, common carrier negligence, breach of contract claims, and adding a new claim under Article 17 of the Montreal Convention and an additional claim for medical malpractice. (Instrument No. 39). On September 23, 2014, the Medlink Defendants filed a motion to dismiss Plaintiffs' medical malpractice claim. (Instrument No. 38). On October 3, 2014, the Continental Defendants filed a motion for partial summary judgment on the basis that Plaintiffs' state law claims were preempted by their Montreal Convention claim. (Instrument No. 40). On September 21, 2014, Plaintiffs filed a Response to Defendants' motions. (Instrument No. 45).

4

On February 25, 2015, this Court granted the Medlink Defendants' motion to dismiss Plaintiffs' medical malpractice claim and granted the Continental Defendants' motion for partial summary judgment, dismissing all but Plaintiffs' remaining claim under Article 17 of the Montreal Convention. (Instruments No. 48; No. 49). On July 15, 2015, this Court granted the parties' joint stipulation of dismissal as to Plaintiff Mrs. Bintz. (Instrument No. 52).

On September 1, 2015, the Medlink Defendants filed a motion for summary judgment on Plaintiff's sole remaining claim under Article 17 of the Montreal Convention. (Instrument No. 56). On October 20, 2015, Plaintiff filed a response to the Medlink Defendants' motion for summary judgment. (Instrument No. 62). On October 28, 2015, the Medlink Defendants' filed a reply to Plaintiff's response. (Instrument No. 64).

On November 30, 2015, the Continental Defendants filed a motion for summary judgment on Plaintiff's remaining claim under Article 17 of the Montreal Convention. (Instrument No. 69). On January 12, 2016, Plaintiff filed a response in opposition to the Continental Defendants' motion for summary judgment. (Instrument No. 86). On January 25, 2016, the Continental Defendants filed a reply in support of their motion for summary judgment. (Instrument No. 92). On February 3, 2016, Plaintiff filed an opposed motion for leave to file a sur-reply in opposition to the Continental Defendants' reply. (Instrument No. 100). On February 15, 2015, the Continental Defendants filed a response in opposition to Plaintiff's motion for leave to file a sur-reply. (Instrument No. 101).

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).

The "movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 322-25(1986)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

After the moving party has met its burden, in order to "avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992). The party opposing summary judgment cannot merely rely on the contentions contained in the pleadings. *Little*, 37 F.3d at 1075. Rather, the "party opposing summary

6

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim," *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 457, 458 (5th Cir. 1998); *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). Although the court draws all reasonable inferences in the light most favorable to the nonmoving party, *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008), the nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (*quoting Little*, 37 F.3d at 1075). Similarly, "unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. Am's Favorite Chicken*, 110 F.3d 295, 297 (5th Cir. 1997).

In deciding a summary judgment motion, the district court does not make credibility determinations or weigh evidence. *EEOC v. Chevron Phillips*, 570 F.3d 606, 612, fn.3 (5th Cir. 2009). Nor is the Court required to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 (5th Cir. 2010); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *Ragas*, 136 F.3d at 458; *Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"). Therefore, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## III.

Defendants each argue in substantively similar motions for summary judgment that their actions following Mr. Bintz's cardiac event on Continental Flight 288 do not constitute an "accident" under Article 17 of the Montreal Convention, as a matter of law. (Instruments No. 56; No. 69). Plaintiff in turn has argued that numerous questions of material fact regarding the actions of both the Medlink and the Continental Defendants preclude summary judgment. (Instruments No. 62 at 14-24; No. 86 at 7-22). Plaintiff further argues *McCaskey* and *Husain* establish that a carrier or its agent's refusal to divert a flight may constitute an "accident", and that the facts and circumstances of each individual case should be weighed in determining whether the event was unexpected or unusual. (Instruments No. 62 at 14-24; No. 86 at 7-22); *Olympic Airways v. Husain*, 540 U.S. 644, 656 (2004); *McCaskey v. Continental Airlines, Inc.*, 133 F.Supp.2d 514 (S.D. Tex. 2001).

The elements of a claim for bodily injury under Article 17 of the Montreal Convention are: (1) bodily injury (2) caused by an accident (3) that occurs on an aircraft during an international flight or during the course of embarking or disembarking from such an aircraft. Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, 1999 WI 33292734 ("Montreal Convention"); *see Air France v. Saks*, 470 U.S. 392, 405-06 (1985). In the context of the Montreal Convention, the term "accident" means "an unexpected or unusual event or happening that is external to the passenger." *Air France*, 470 U.S. at 405.

In Plaintiff's Response to each of Defendants' motions for summary judgment, he argues that *McCaskey*, a case from the Southern District of Texas, prescribes that what constitutes an accident in a particular case should be evaluated "flexibly", applying the definition of an accident after an "assessment of all the circumstances surrounding a passenger's injuries."

8

(Instruments No. 62 at 13; No. 86 at 14); *McCaskey v. Continental Airlines, Inc.*, 133 F.Supp.2d at 574; *see also Olympic Airways v. Husain*, 540 U.S. 644, 656 (2004) (citing *McCaskey*). In *McCaskey*, the plaintiff's husband suffered a stroke while on a Continental flight from Houston to New Jersey. 133 F.Supp at 517. Like in the instant case, when the incident occurred, the captain called MedLink and the decision was made not to divert the flight. *Id.*; (Instrument No. 21-4, at 5). Some weeks later, the plaintiff's husband died from complications related to the stroke, and the plaintiff filed suit against Continental, MedAire, and others. *Id.*

The *McCaskey* Court held that a failure to divert a plane after a medical emergency is not *ipso facto* an accident. *McCaskey*, 159 F. Supp. 2d at 574. *McCaskey* held that a jury should decide that issue, after receiving proper instruction from the Court on the meaning of the term "accident." *Id.* at 574. Here, the in-flight communications with the Medlink Defendants and the ultimate decision not to divert the flight are largely analogous to the circumstances in *McCaskey*. In this case, the record relating to Mr. Bintz's in-flight incident and the subsequent response by Defendants is voluminous, and both Plaintiff and Defendants have presented expert evidence as to whether the circumstances relating to the medical event were handled in such a manner as to qualify as an unexpected or unusual event or happening. *Air France*, 470 U.S. at 405.

Plaintiff has pleaded that questions of material fact exist as to whether Defendants' response constitutes an accident, such as: what was communicated to or known by the flight attendant assisting the volunteer nurse during the flight; what the flight attendant communicated to the captain; what the captain communicated to Medlink; whether the proper protocol was followed; and, under the totality of these circumstances, whether Mr. Bintz's symptoms should have required a diversion. *See* (Instrument No. 86 at 16). In addition, Continental Defendants' Reply itself indicates that there remain issues of material fact regarding the proper protocol for

diverting a flight when a MedLink recommendation does not comport with the onboard medical personnel's recommendation. *See* (Instrument No. 92 at 9-10); *see also* (Instrument No. 86 at 19).

As *McCaskey* instructs, "an injury resulting from routine procedures ... can be an 'accident' if those procedures or operations are carried out in an unreasonable manner." *McCaskey*, 159 F. Supp. 2d at 572, citing, *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 142 (2d Cir. 1998). Plaintiff argues that the facts show that members of the flight crew were fairly certain Mr. Bintz was having a heart attack, but did not divert the plane, instead continuing with the cross-country flight. (Instrument No. 86 at 16). Here, Dr. Boothe has testified that Mr. Bintz's symptoms were classic symptoms of a heart attack, and that in such cases, the quicker that treatment can be provided, the better. (Instrument No. 86-1 at 25-30). Additionally, Nurse Lynne Blackwell testified that she told the crew on Flight 288 that Mr. Bintz was probably having a heart attack and that the flight should divert. (Instrument No. 69-2 at 82-87). Flight attendant Anthony Brancato testified that he conveyed to the captain of Flight 288 that Nurse Blackwell had stated that "Mr. Bintz was in grave danger, needed immediate attention and the plane should divert." (Instrument No. 69-1 at 12). Given the disputed issues surrounding this incident, a fact intensive inquiry into the Bintz incident should be conducted by the trier of fact. *See McCaskey*, 159 F. Supp. 2d at 574.

In light of the foregoing analysis, the Court finds that disputed issues of material fact remain as to whether an "accident" occurred under Article 17 of the Montreal Convention. Accordingly, Defendants' motions for summary judgement are DENIED.

## IV.

Accordingly, the Medlink Defendants' Motion for Summary **(Instrument No. 56)** and the Continental Defendants' Motion for Summary Judgment **(Instrument No. 69)** are **DENIED**. As such, Plaintiff's Opposed Motion for Leave to File Sur-Reply is **DENIED** as **MOOT**. **(Instrument No. 100).**

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this the 3rd day of March, 2016, at Houston, Texas.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**