Mark C. Dangerfield (Bar No. 010832)
Wm. Charles Thomson (Bar No. 004269)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road, suite 1100
Phoenix, Arizona 85016
Telephone:   (602) 530-8000
Facsimile:    (602) 530-8500
E-mails: mark.dangerfield@gknet.com
            wct@gknet.com
Attorneys for Defendants MedAire, Inc., Steven Joe Reinhart, D.O., and Jessica Monas, M.D.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LINDA ANN BAILLIE, individually, as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, and on behalf of all heirs and next of kin of JAMES DONALD BAILLIE, II, deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>MEDAIRE, INC.; STEVEN JOE REINHART, D.O.; and JESSICA MONAS, M.D.,<br><br>    Defendants. | No. 2:14-cv-00420-PHX-SMM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF BILL OF COSTS** |

Under Fed. R. Civ. 54(d), costs "should be allowed to the prevailing party." Defendants' Bill of Costs sought to tax the following costs in four categories:

- $384.20 in costs for service of subpoenas;
- $25,391.25 in costs for court reporters and deposition transcripts;
- $3,575 in witness fees; and
- $1,055 in costs for documents produced by third-party Mayo Clinic.

As discussed below, based on Plaintiff's objections, Defendants have revised the costs sought for court reporters and depositions transcripts downward to $19,778.76 (to correspond to the amount calculated at p. 4 of the chart attached as Ex. 2 to the Declaration of Francis G. Fleming, Dkt. 104-2), and revised the costs sought for witness fees downward to $2,580.

///

Plaintiff's objections stem mainly from Plaintiff's argument that, because Defendants' Motion for Summary Judgment only cited to nine deposition transcripts, those are the only deposition costs that should be recoverable. Plaintiff also makes a few other arguments about the details of the costs sought, which we address below.

## I. LOCAL RULE 54.1(e) SPECIFICALLY ALLOWS THE COST OF SERVICE FEES.

Plaintiff argues that, since only one of the three depositions for which Defendants seek service fees was cited by Defendants in the summary judgment briefing, service fees for the other two depositions are not recoverable. But Local Rule 54.1(e) places no such limit, simply stating that "service fees are allowable by statute" as taxable items. In any event, each of the three depositions in question was necessarily obtained in this case, and each deposition was in fact used in the summary judgment briefing.

## II. THE TRANSCRIPT COSTS FOR ALL 33 DEPOSITIONS ARE TAXABLE SINCE THEY WERE ALL NECESSARILY OBTAINED IN THIS CASE.

Plaintiff argues that the recoverable costs of deposition transcripts should be limited only to the nine depositions Defendants referenced in the summary judgment briefing. But this argument not only misstates the law, it misstates the facts.

First, the law. The test for deposition taxability is not whether a deposition is cited in a summary judgment motion or received into evidence. Rather, under Local Rule 54.1(e)(3), the cost of a deposition "is taxable if it was necessarily obtained for use in the case *whether or not the deposition was actually received into evidence or was taken solely for discovery purposes*." (emphasis added.) Although the Ninth Circuit does not appear to have opined on when a deposition is "necessarily obtained for use in the case," the test articulated in other circuits is whether the deposition "seemed necessary at the time it was taken." 10 Fed. Prac. & Proc. Civ. § 2676 (3d ed.). Thus, in *In re Williams Securities Litigation-WCG Subclass*, 558 F.3d 1144, 1149 (10th Cir. 2009), the Tenth Circuit held that, in order for the costs of depositions to be awardable to the party who prevailed on summary judgment, the depositions did *not* have to be used in deciding the summary judgment motion. The court called such a view "exceedingly narrow." *Id.*

///

2

Second, the facts. Fully 30 of the 33 depositions taken in this case were in fact referenced or taken account of in the summary judgment briefing by at least one of the parties. And the only three depositions that were not referenced or considered in the summary judgment briefing were those of three expert witnesses: Plaintiff's designated damages expert, Larry Stokes, Ph.D.; Plaintiff's designated airline expert, Captain Daniel Mesnard; and Defendants' designated expert on remote medical advice, Dr. Ronald Roth. Plaintiff took Dr. Roth's deposition, and Defendants took the depositions of Mr. Stokes and Capt. Mesnard. Under the complex circumstances of the case, it was reasonable and necessary for the parties to depose the other side's designated expert witnesses, and both parties did so. Moreover, the expert reports of both Capt. Mesnard and Dr. Roth were attached as exhibits in the summary judgment briefing.

Of the remaining 30 depositions, Defendants attached to their summary judgment motion excerpts of nine such depositions, as Plaintiff states. But the reports of Defendants' experts—Dr. Roth (Dkt. 86-1, at p. 23), Dr. Budoff (Dkt. 86-1 at p. 69), and Capt. Fortune (Dkt. 86-1 at p. 114)—which were also attached to and referenced in the Defendants' summary judgment briefing—considered the depositions of 16 additional witnesses. Materials considered by Dr. Roth in his expert report, for example, included the depositions of 15 additional witnesses that he reviewed in coming to his opinions.[1] Defense expert Dr. Budoff's report refers to the deposition of another witness, Dr. Michael Covalciuc, who had treated Mr. Baillie. Dkt. 81-1 at pp. 71-74. And Capt. Fortune's report refers to the depositions of the three pilots of the flight in question—Capt. Fowler and First Officers Grant and Simmonds—each of whose depositions had also been considered by Dr. Roth. Dkt. 81-1 at p. 126. Thus, Defendants' summary judgment briefing specifically referenced or considered the depositions of 25 witnesses.

---

[1] Depositions referenced by Dr. Roth included: three by Dr. Steven Reinhart (05/16/14, 07/07/14, and 01/06/16); two by Dr. Jessica Monas (07/22/14 and 12/16/15); Michelle Tyler (12/15/15); two by Matthew Whitley (09/23/15 and 12/16/15); Diann Weaverling (12/17/15); Dr. Paulo Alves (01/05/16); Capt. Stephen Fowler (05/29/14); two by First Officer Alastair Grant (05/29/14 and 10/22/15); First Officer Matthew Simmonds (05/30/14); Georgina Bolton (05/30/14); and Dr. Brian Hess (09/25/15). *See* Decl. of Mark Dangerfield, filed concurrently herewith.

Moreover, beyond the 25 depositions that Defendants referred to in their summary judgment briefing, Plaintiff herself attached excerpts of 11 depositions to her Local Rule 56.1(b) Controverting Statement of Facts and Separate Statement of Facts in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Dkt. 91.[2] Those included four additional depositions not cited in Defendants' summary judgment briefing: a 05/27/14 deposition of Nicola Sharrad, a 11/02/15 deposition of Dr. Octavio Pajaro, a 07/29/16 deposition of Dr. Paulo Alves, and an 08/12/16 deposition of Capt. Michael Fortune, thus bringing the total number of depositions referenced or considered in the summary judgment briefing to 29. And Plaintiff's expert witness Capt. Daniel Mesnard, whose expert report was referenced in and attached to Plaintiff's summary judgment briefing at Dkt. 91-1, p. 8, considered many other depositions, including the deposition of one other witness not mentioned elsewhere: the 12/01/15 deposition of Dr. Daniel P. Oscislawski. *See* Decl. of Mark Dangerfield, filed concurrently herewith.

And the case is complex. This case involves Plaintiff's decedent, Mr. Baillie, who boarded a non-stop British Airways ("BA") flight from London to Phoenix. While on that flight, the BA pilot consulted, via satellite phone, emergency physicians based in Phoenix regarding Mr. Baillie's medical condition, a service arranged by MedAire. The pilot also consulted an onboard doctor about Mr. Baillie. The plane eventually landed in Phoenix, and for the next three months Mr. Baillie was treated by many doctors and other medical personnel in Phoenix, at two different hospitals, before passing away. This presented complicated issues-of-fact, including issues relating to international transoceanic aviation, the provision of remote, ground-based medical advice to airlines in flight, and the nuances of heart disease and its treatment and survivability.

/ / /

---

[2] *See* Dkt. 91-1, pp. 2-4 (referencing attached deposition excerpts from 12/15/15 dep. of Michelle R. Tyler; 07/22/14 dep. of Defendant Jessica Monas, M.D.; 12/16/15 dep. of Defendant Jessica Monas, M.D.; 01/05/16 dep. of Paulo Magalhaes Alves, M.D.; 07/29/16 dep. of Paulo Magalhaes Alves, M.D.; 08/12/16 dep. of Captain Michael G. Fortune (Ret.); 07/07/14 dep. of Defendant Steven Joe Reinhart, D.O.; 05/27/14 dep. of Nicola Sharrad; 05/29/14 dep. of Captain Stephen Fowler; 11/02/15 dep. of Octavio E. Pajaro, M.D.; and 01/06/16 dep. of Defendant Steven Joe Reinhart, D.O.

As a result of those complications, the parties took depositions of the three BA pilots on the flight, as well as several flight attendants who were involved (all based in England), the onboard doctor who was consulted (also based in England), the two emergency physicians based in Phoenix who gave the remote advice, several representatives of MedAire, the plaintiff and her daughter, and various doctors who treated Mr. Baillie either at St. Luke's Medical Center or the Mayo Clinic Hospital in Phoenix. In addition, the parties identified six expert witnesses, each of whom was deposed. All of these depositions reasonably seemed necessary in the context of this case. *See Finchum v. Ford Motor Co.*, 57 F.3d 526 (7th Cir. 1995) (finding that the trial court did not abuse its discretion in awarding $22,230.95 for the costs of depositions taken, when the complexity of the case from both a medical and engineering standpoint necessitated taking the depositions in question, even though no determination was made that each depositions was necessary).

Plaintiff also quibbles about some "Realtime," rough draft, and other miscellaneous charges for certain witnesses. Rather than argue about such items, Defendants will simply concede Plaintiff's proposed reductions as to those items, and use the total calculated by Plaintiff of $19,778.76 (*see* p. 4 of chart at Dkt. 104-2) for the taxable costs of depositions.[3]

### III. DEFENDANTS ARE ENTITLED TO RECOVER THE FEES CHARGED BY PLAINTIFF'S EXPERT WITNESSES TO HAVE THEIR DEPOSITION TAKEN.

Defendants' Bill of Costs listed $3,575 in taxable witness fees. Based on Plaintiff's response, Defendants now modify that amount to $2,580: that is the total of the fees charged by two of Plaintiff's experts for appearing at their depositions; namely, Larry D. Stokes, Ph.D. ($1,000) and Capt. Daniel Mesnard ($1,580). Plaintiff correctly notes that the $1,580 amount was mistakenly listed in Defendants' list of deposition costs.[4]

///

---

[3] "Realtime" allows an attorney to see the witness' testimony on a laptop computer screen immediately, as it is transcribed. And for the depositions in London—which the lawyers for the parties had to travel overseas to take—Realtime and rough drafts were reasonable services to help ensure the testimony given or taken was done accurately and completely.

[4] Defendants accept Plaintiff's offer to directly pay the deposition attendance fees of defense experts Drs. Roth and Budoff of $1,200 and $1,375, respectively, and thus agree to remove those items from their Bill of Costs.

Plaintiff argues that the fees for such witnesses, however, are limited to the rate "fixed by statute," citing 28 U.S.C. § 1821(b), which limits witness fees to $40.00 per day. However, § 1821(a)(1) states that a witness shall be paid such fees "[e]xcept as otherwise provided by law…" And as the Eighth Circuit has recently held, the "flexible authorization" in Fed. R. Civ. P. 26(b)(4)(E), which allows payment of a "reasonable fee" to an expert, "supersedes the fee schedule outlined in § 1821(b)." *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 465 (8th Cir. 2015) (awarding the prevailing party, as a taxable cost, $975 for expert witness fee paid to the opposing side's expert for taking his deposition). As the *Stanley* court explained, by beginning with the phrase, "[e]xcept as otherwise provided by law," § 1821(a)(1) "recognizes that other laws may override its limitations. And since Rule 26 was enacted after § 1821, and refers explicitly to witness fees, it exhibits "clear congressional intent to surpass the limitations of § 1821(b)." *Cf. Halasa v. ITT Educational Services, Inc.*, 690 F.3d 844, 849-852 (7th Cir. 2012) (holding that Rule 26(b)(4)(E) supersedes 28 U.S.C. § 1821, by virtue of the Rules Enabling Act, 28 U.S.C. § 2072(b); thus allowing costs of an expert deposition to be taxed so as to include a "reasonable fee" not limited to $40).

And while Local Rule 54.1(e)(4) does state that "[f]ees for expert witnesses are not taxable in a greater amount than that statutorily allowable for ordinary witnesses," that statement seems to assume that 28 U.S.C. § 1821 requires such, when in fact, for the reasons set forth above, it does not. In any event, the Court, in light of the Rule 26(b)(4)(E) authorization of a "reasonable fee" to an expert witness, could also tax the $2,580 in question under Local Rule 54.1(e)(10): "Other items may be taxed with prior Court approval."

## IV.   THE COURT SHOULD TAX THE COSTS OF THE MAYO CLINIC RECORDS.

Finally, Defendants should be awarded the costs for copies of documents produced by the Mayo Clinic Hospital. Plaintiff admittedly obtained those documents from the record custodian of the Mayo Clinic and then produced a DVD of the documents to Defendants, who then had one copy of the documents printed out. Excerpts from those copies were attached as an exhibit to the summary judgment briefing (Dkt. 86-1 at p. 263), and

Defendants' expert Dr. Budoff reviewed pertinent Mayo Clinic records regarding Mr. Baillie in arriving at his opinions. *E.g.* Defendants' Statement of Facts, ¶¶ 53-56 (Dkt. 86, p. 10); Expert report of Dr. Budoff (Dkt. 86-1 at pp. 71-74, 77). So that cost is taxable.

## **CONCLUSION**

Assuming the Court agrees with Plaintiff's objection to the "Realtime" and other miscellaneous critiques of Defendants' deposition costs, Defendants seek a total of $23,797.96 in taxable costs, broken down as follows:

$384.20 in costs for service of subpoenas;

$19,778.76 in costs for court reporters and deposition transcripts;

$2,580 in witness fees; and

$1,055 in costs for documents produced by third-party Mayo Clinic.

RESPECTFULLY submitted this 19th day of October, 2017.

           GALLAGHER & KENNEDY, P.A.

           By: /s/ *Mark C. Dangerfield*
              Mark C. Dangerfield
              Wm. Charles Thomson
              2575 East Camelback Road, Suite 1100
              Phoenix, Arizona 85016
              *Attorneys for Defendants MedAire, Inc.; Steven Joe Reinhart, D.O.; and Jessica Monas, M.D.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 19th day of October, 2017, a copy of the foregoing document was filed electronically via the Court's CM/ECF system and Notice of Electronic Filing served on all parties by operation of the Court's CM/ECF system.

>Stephen M. Dichter, Esq.
>Jeffrey O. Hutchins, Esq.
>Christian Dichter & Sluga, P.C.
>2700 North Central Avenue, Suite 1200
>Phoenix, AZ  85004
>>sdichter@cdslawfirm.com
>>jhutchins@cdslawfirm.com
>
>*Attorneys for Plaintiff*
>
>Francis G. Fleming, Esq.
>Robert J. Spragg, Esq.
>Kreindler & Kreindler LLP
>750 Third Avenue
>New York, NY  10017
>>ffleming@kreindler.com
>>rspragg@kreindler.com
>
>*Attorneys for Plaintiff*

By: */s/ Candice J. Cromer*