**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 20 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LINDA ANN BAILLIE, individually, and as Personal Representative of the Estate of the Deceased/ and on behalf of all heirs and next of kin of the deceased, Estate of James Donald Baillie, II,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>MEDAIRE, INC.; et al.,<br><br>Defendants-Appellees. | No.   17-17022<br><br>D.C. No. 2:14-cv-00420-SMM<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted March 5, 2019
Phoenix, Arizona

Before: IKUTA and FRIEDLAND, Circuit Judges, and BLOCK,[**] District Judge.

Linda Ann Baillie appeals the district court's grant of summary judgment to

defendants MedAire, Inc. and two of its physicians (collectively, "MedAire") in

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

her suit under the Montreal Convention (the "Convention") arising out of a heart attack that her husband, James Baillie, suffered on a British Airways flight from London to Phoenix. Reviewing de novo, *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015), we reverse.

To prevail in her claim under Article 17 of the Convention, Baillie must prove that MedAire's actions (1) constituted "an unexpected and unusual event or happening that is external to the passenger" (2) that comprised "some link in the chain" of events that led to Mr. Baillie's death.[1] *Air France v. Saks*, 470 U.S. 392, 405–06 (1985); *see also* Convention for the Unification of Certain Rules for International Carriage by Air art. 17(1), *ratified* August 29, 2003, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309. Baillie has presented sufficient evidence, taken in the light most favorable to her as the nonmovant, to establish a genuine issue as to these material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

First, a reasonable jury could conclude that MedAire acted in an unusual or unexpected manner by failing to recommend that the airline divert the flight so that

---

[1] We do not consider whether the Montreal Convention applies to MedAire in this case. *See* Convention for the Unification of Certain Rules for International Carriage by Air art. 30, *ratified* August 29, 2003, S. Treaty Doc. No. 106-45, 2242 U.N.T.S. 309 (hereinafter "Montreal Convention") (Convention's liability regime applicable to agents of air carriers). The parties have not appealed the district court's determination that the Convention applies, and the issue does not affect our subject matter jurisdiction, *cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.").

2

Mr. Ballie could receive medical attention. To determine whether MedAire's actions were expected or usual, the jury would consider industry standards, best practices, expert medical testimony, and any other relevant evidence. *See, e.g.*, *Prescod v. AMR, Inc.*, 383 F.3d 861, 868 (9th Cir. 2004) ("While baggage removal and delivery delays are routine in air travel, the atypical aspect of this case was the promises made by defendants' employees that the bag would not be taken from [the passenger] and would not be delayed."); *Fishman v. Delta Air Lines*, 132 F.3d 138, 143 (2d Cir. 1998) ("The application of a hot compress . . . may have been a routine measure for relieving the pain suffered by passengers incident to the descent of the aircraft; but the measure was carried out in a way (using excessive, scalding water) that was not expected, usual, normal, or routine."). Baillie's expert witness, cardiologist Dr. Candipan, testified that he would have expected a physician to recognize Mr. Baillie's symptoms as consistent with a heart attack and to have recommended a diversion accordingly. MedAire's expert contested that medical opinion and also argued that the decision whether to divert a flight depends on other factors. This dispute causes the question whether MedAire's advice was unexpected to be one a jury must resolve in light of all of the evidence and conflicting expert testimony.[2]

---

[2] Contrary to the dissent's suggestion, it is not inappropriate to evaluate MedAire's conduct against a negligence standard to help determine whether

3

Second, a reasonable jury could conclude that MedAire's actions were a link in the causal chain that resulted in Mr. Baillie's death. Although MedAire contends that Baillie cannot establish the requisite causation because Dr. Candipan could not opine to a reasonable degree of medical probability that Mr. Baillie would have survived had he undergone surgery sooner, the deposition testimony on which it relies does not establish precisely what Dr. Candipan believed James's odds of survival would have been. Taking this testimony in the light most favorable to Baillie, a jury could credit Dr. Candipan's opinion that there was a non-negligible chance that James would have survived. Similarly, both Dr. Candipan and MedAire's expert physician agreed that some benefit could have resulted had his artery been reopened between six and eight hours after the onset of his heart attack. There is thus a genuine question of material fact as to whether MedAire's actions were at least some link in the causal chain leading to Mr.

---

MedAire's conduct was unexpected or unusual. The Convention provides for unlimited liability for negligent conduct that also qualifies as an accident, but it also imposes strict liability subject to a damages cap for accidents for which the defendant proves lack of negligence or other fault. *See* Montreal Convention art. 21 ("For damages arising under paragraph 1 of Article 17 not exceeding 100 000 Special Drawing Rights for each passenger, the carrier shall not be able to exclude or limit its liability," but the carrier's liability is limited if it proves "such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents."). The language the dissent cites from *Olympic Airways v. Husain*, 540 U.S. 644, 657 (2004), about the inapplicability of a negligence standard stems from the existence of the Convention's strict liability provisions and does not suggest that a higher level of fault than negligence is required for *any* liability.

Baillie's injuries and death.

**REVERSED and REMANDED.**