# EXHIBIT 4

Francis G. Fleming, 004375
ffleming@kreindler.com
Robert J. Spragg
rspragg@kreindler.com
KREINDLER & KREINDLER LLP
750 Third Avenue, 32nd Floor
New York, NY 10017
Tel.: (212) 687-8181
Fax: (212) 972-9432

Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Tel: (602) 792-1700
Fax: (602) 792-1710

*Attorneys for Plaintiff Linda Ann Baillie*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

-------------------------------------------------------x

LINDA ANN BAILLIE, individually, as Personal Representative of the Estate of JAMES DONALD BAILLIE, II, and on behalf of all heirs and next of kin of JAMES DONALD BAILLIE, II, deceased,

     Plaintiff,

  v.

MEDAIRE, INC., STEVEN JOE REINHART, D.O., and JESSICA MONAS, M.D.,

     Defendants.

-------------------------------------------------------x

Case No.: 2:14-CV-00420-DJH

**JOINT CASE MANAGEMENT REPORT**

**B. Defenses of Defendants MedAire, Inc., Steven Joe Reinhart, D.O. and Jessica Monas, M.D.:**

The MedAire Defendants do not adopt plaintiff's statement of the case, but do not believe this is the proper forum to argue the facts.

MedAire provides pre-flight assessments of a passenger's fitness to fly, as well as remote medical advice to airlines with a sick or injured passenger on board. MedAire uses a team of registered nurses to provide fitness-to-fly assessments, and contracts with emergency room doctors to provide remote medical advice once a flight is airborne.

Plaintiff has no proof that the defendants' actions or omissions constituted an onboard "accident" under the Montreal Convention, or in other words, proof that the defendants' actions or omissions amounted to "an unusual or unexpected event that was external to the passenger." Mr. Baillie's heart attack was clearly not "external to the passenger." Under applicable case law, plaintiff would thus need to prove that the defendants' response to Mr. Baillie's condition fell below applicable industry standards. But plaintiff has failed to provide any evidence of what, if any, industry standards governed the defendants' actions here, let alone any evidence that the defendants' actions fell below any such industry standards.

Plaintiff's primary claim seems to be that the doctor defendants failed to recommend that British Airways Flight 289 divert to a closer landing location. Only the pilot of a plane, however, has the authority to decide to divert an aircraft. And here, the pilot or pilots of that flight made the independent decision not to divert the aircraft, but rather to continue to the planned landing destination in Phoenix.

Moreover, there are no industry standards governing when, or under what circumstances, a provider of remote medical advice to airlines, such as MedAire, should recommend that an aircraft divert to a different location. In the absence of such standards, a doctor providing remote medical advice to an aircraft must therefore simply exercise his or her professional judgment in deciding whether or not to recommend or agree with a diversion, using his or her training, background, and experience, applied to all the unique circumstances of a given situation.

The defendant doctors did so here. When British Airways first contacted Defendant

Dr. Reinhart at approximately 18:50 UTC on March 23, 2012, and again at approximately 19:12 UTC, and provided him with certain limited information about Mr. Baillie's condition, diversion was not warranted based on Dr. Reinhart's professional judgment and experience applied to that limited information he received. As Dr. Reinhart understood from 30 years of experience in emergency medicine, the cause of chest pain is very difficult to diagnose, even in an emergency room stocked with all the appropriate medical equipment and devices, and a high percentage of people experiencing chest pain are not in fact having a heart attack. Furthermore, in contrast to an emergency room, almost all aircraft, including the British Airways Boeing 747-400 used in Flight 289, lack the medical equipment needed to confirm or rule out a heart attack diagnosis, such as an EKG machine. Based on his experience, Dr. Reinhart would also have understood that, at that point three and one-half hours into the flight and over the Atlantic Ocean, there were no readily accessible diversion locations with appropriate medical facilities to deal with a heart attack, if that's what Mr. Baillie was experiencing.

      Dr. Reinhart did, however, believe that diversion would need to be at least considered if Mr. Baillie's condition worsened, and so he asked the British Airways pilot to call MedAire back should that occur. When, some three and a half hours later, the pilot of BA Flight 289 did finally call MedAire back and reported that Mr. Baillie's condition seemed to have worsened, Defendant Dr. Monas, using her professional judgment, agreed that, since the people on board the plane felt that Mr. Baillie was not looking well, diversion might be appropriate, and agreed to help locate an appropriate diversion location.

      Ultimately, though, the British Airways pilot, without further consultation with the defendants, independently made the decision not to divert the aircraft. The British Airways pilot apparently made that decision based on Mr. Baillie's own request that the flight continue to Phoenix, and based further on the advice of two onboard doctors, who after directly evaluating Mr. Baillie, advised the British Airways crew that they were of the opinion that continuing on to Phoenix would not worsen Mr. Bailie's condition.

      Not only does the plaintiff lack proof that the defendants' actions or omissions constituted an "accident" under the terms of the Montreal Convention, but the plaintiff

8