# EXHIBIT 6

University of Pittsburgh

*School of Medicine*
*Department of Emergency Medicine*

Forbes Tower, Suite 10028
3600 Forbes at Meyran Avenue
Pittsburgh, PA 15260
412-647-8287
Fax: 412-864-3400

## EXPERT REPORT OF RONALD N. ROTH, M.D., FACEP
## IN THE MATTER OF
## *LINDA ANN BAILLIE V. MEDAIRE ET AL.*

I have been asked by counsel for the defendants in this matter to review the evidence and provide my professional opinions on various matters that I understand may be important to this case. For convenience, I have organized my opinions into seven separate sections, set forth below. All my opinions are based on a reasonable degree of medical probability.

### Qualifications:

I have been a board certified emergency medicine physician since 1986. In 2014, I also received board certification in Emergency Medical Services (EMS), a subspecialty of Emergency Medicine. I currently serve as a Professor of Emergency Medicine and as Chief of the Division of EMS at the University of Pittsburgh Department of Emergency Medicine. I also participate as an emergency physician in the STAT-MD service offered by the University of Pittsburgh Medical Center ("UPMC"), and in that role provide medical consultation services to airlines for inflight passenger emergencies and pre-flight screening.

In addition, I serve as the medical director for various organizations, including the City of Pittsburgh Department of Public Safety and the Emergency Operations Center of Allegheny County, Pennsylvania. I also serve as the team physician for the Pittsburgh Steelers.

A copy of my CV is attached to this report.

1

**First Set of Opinions:**

Giving remote advice to the pilot or crew of an airline about an ill or injured passenger has the narrow goal of assessing the passenger's symptoms and discussing the limited treatment options available until the plane lands. This is very different than treating a patient in an emergency department.

I understand that MedAire was the first company in the United States to offer, on a commercial basis, the service of providing remote medical advice to airlines, and MedAire thus developed the model for doing so.  UPMC's STAT-MD offers a similar service in which I participate, which began in 1998.

Both MedAire's "MedLink" service and UPMC's STAT-MD service make emergency medicine physicians available for airline crews to speak to, 24/7, in order to receive medical consultation about ill or injured passengers. Such services are not intended to, and do not, function as a way for an emergency physician to diagnose and treat a patient on board an aircraft as he or she would do in an emergency department.

Rather, the services simply enable an airline pilot or crew member to briefly confer with an emergency physician about an ill or injured passenger's symptoms, and to receive advice on how the pilot or crew might handle that situation. In some cases the physician may also offer his or her view as to whether diversion of the flight to an unscheduled location might be medically appropriate, though only the captain of an airline has the authority to divert a plane to an alternate landing site. Remote medical advice services such as MedLink and STAT-MD help airlines better deal with ill or injured passengers, and may also reduce unnecessary flight diversions, which not only impose hardships on hundreds of other passengers, but can be dangerous as well.

Although both MedLink and STAT-MD make use of physicians trained in emergency medicine, the services are nothing like examining and treating a patient in an emergency department.  MedLink and STAT-MD doctors typically are not able to see or speak to an ill passenger, and they receive information about the passenger second, third

or even fourth hand. For example, the ill passenger may talk to an onboard medical provider about his or her condition, who then tells a flight attendant, who then talks to the pilot, who then calls the remote medical service. Moreover, when medical information is collected and communicated by lay people, it is not uncommon for information to be passed on imperfectly. In addition, communications between the airplane and the remote service are often difficult to understand due to the poor quality of the air-to-ground phone patch.

Some airlines have facilities that permit MedLink or STAT-MD physicians to speak directly with an onboard doctor located outside the cockpit, which can sometimes make communications about an ill passenger much easier. But I have been advised that the British Airways (BA) aircraft involved here had no such facilities.

There is also limited diagnostic equipment available onboard an aircraft (mainly, as in this case, just a stethoscope and blood pressure cuff), assuming there is onboard medical personnel who know how to use the equipment and the equipment is functioning. Moreover, an airplane in flight is very noisy, and because of the noise, stethoscopic examination of the heart, lungs, or abdomen is usually impossible. Aircraft typically have no ECG machine on board, and have no ability to evaluate blood or urine samples. An airplane in flight is not only very noisy, but lighting is dim and space is confined, further complicating both the evaluation and treatment of ill passengers. Each aircraft has a medical kit containing some drugs, but its contents are very limited.

Some airlines do have equipment on board that permit an ECG of a passenger to be taken, which is a key test that can sometimes confirm that a passenger is experiencing a serious heart attack. But, once again, I understand that BA aircraft have no such equipment.

Also, when patients present in the emergency department, various risk scores have been developed which can be helpful in stratifying patients who are at risk for ACS, but those risk scores rely in part on data that is not available onboard an airline. One such