# EXHIBIT 7

# University of Pittsburgh

*School of Medicine*
*Department of Emergency Medicine*

Forbes Tower, Suite 10028
3600 Forbes at Meyran Avenue
Pittsburgh, PA 15260
412-647-8287
Fax: 412-864-3400

**EXPERT REBUTTAL REPORT OF
RONALD N. ROTH, M.D., FACEP
IN THE MATTER OF
*LINDA ANN BAILLIE V. MEDAIRE, ET AL.***

I have been asked to review the February 1, 2016 report of Dr. Robert Candipan, as well as the March 21, 2016 report of Captain Daniel Mesnard, and provide my professional opinions on issues they address that fall within my expertise. I base my opinions on my background, training and experience, as well as my review of the evidence made available to me in this case. My qualifications were previously set forth in my expert report dated May 25, 2016, to which was attached my CV.

All my opinions are based on a reasonable degree of medical probability.

In general, it is my opinion that:

- Dr. Candipan's report shows a lack of awareness or expertise for the manner in which remote medical advice can and should be provided to an aircraft. Many of his comments are more appropriate for a patient in a hospital or hospital emergency department.

- Dr. Candipan's conclusions about what the MedLink physicians should have done also rely on data that was not provided to them.

- Dr. Candipan's opinion that Dr. Reinhart should have recommended that BA 289 divert to another airport also fails to acknowledge that the flight was then in the middle of the North Atlantic Ocean, about two hours from any diversion point with

1

notes say that, at 19:18, the "flight attendant reported that the passenger's pulse is irregular, BP 100/70 with increased chest pain and crackles on the left side." Moreover, the Intake Form in this case does refer to the "crackles left hand."

In addition, the most important vehicle for a new physician to get up-to-date is to ask the aircraft crew directly, which is what Dr. Monas did. Though potentially frustrating for the cabin crew, this practice reduces the number of parties playing the "telephone game," and allows for confirmation of details and provision of updates. Dr. Monas' questions eventually brought out that the passenger was now sweating and had difficulty breathing, even though his vital signs had been "quite stable" throughout the flight. By this time, the pilot had already advised Dr. Monas that they were considering a diversion, and wanted her "take" on it. As the MedAire CSE's contemporaneous computer notes summarized Dr. Monas's eventual response, "Dr. Monas Recommends to consider diverson [sic] locations and options."

**Second Rebuttal Opinion: The actions of Drs. Reinhart and Monas were reasonable and not "unusual," and in any event Dr. Candipan does not have the background and experience to properly evaluate the matter.**

Based in significant part on mistaken facts, as discussed above, Dr. Candipan gives his opinion that Drs. Reinhart and Monas acted in ways that were not in line with what would be considered "standard and usual practice," and that their alleged "lapses" led to Mr. Baillie's treatment "being unusually and unexpectedly delayed." According to Dr. Candipan, the "outcome"—presumably meaning Mr. Baillie's demise—was "unexpected and accidental and represented a failure to follow procedures and protocol."

I have described in my 05/25/16 report why (contrary to Dr. Candipan), the actions of both MedAire and the MedLink doctors, Reinhart and Monas, were in fact reasonable and usual, and there is no need to repeat the grounds for that opinion here. But it is also my opinion that Dr. Candipan—as a cardiologist who is neither trained in emergency medicine nor, according to his CV, has any background in the provision of

5

remote medical advice to aircraft—lacks the necessary background and experience to know what the "procedures and protocol" are in those fields, and is therefore not qualified to give opinions in that area.

**Third Rebuttal Opinion: At the time of the phone patches with Dr. Reinhart, a recommendation of diversion was not reasonable, was not required by any applicable standards or protocol, and was not warranted in light of all the facts.**

At page 6 of his 02/01/16 report, Dr. Candipan offers his opinion that the "clinical information that was provided to the MedAire/MedLink physicians was more than adequate for the MedAire/MedLink physicians to come to a working diagnosis that would have placed a myocardial infarction high if not on top of a list of potential medical conditions." Dr. Candipan then opines that "[r]ecognizing that a myocardial infarction was a likely scenario should have prompted [the MedLink physicians] to make a recommendation for diversion."

This opinion seems to be based both on Dr. Candipan's misapprehension of some key facts as well as his lack of understanding of other key facts.

I pointed out in my first rebuttal opinion above, as well as in the Fourth Set of Opinions in my 05/25/16 report, the very limited clinical information that Dr. Reinhart was given about Mr. Baillie: 61-year old male with no history of cardiac problems and taking no medications, pale, with chest pain, blood pressure 100/70, pulse 100. Dr. Reinhart was also told that the onboard physician had heard a "crackle" on the passenger's left side.

While Dr. Candipan places significant emphasis on the presence of "crackles" with the other symptoms, Dr. Reinhart properly disregarded the "crackles" observation, knowing from his long experience that crackles cannot be accurately detected with an airline medical kit stethoscope onboard an inflight Boeing 747. And Dr. Reinhart was proven to be correct: after the plane landed, neither the paramedics, the nursing staff, the

6