# EXHIBIT 8

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


LINDA ANN BAILLIE, individually,    )
as Personal Representative of the   )No.2:14-cv-00420-SMM
Estate of JAMES DONALD BAILLIE,     )
II, and on behalf of all heirs and  )
next of kin of JAMES DONALD         )
BAILLIE, II, deceased,              )
                                    )
          Plaintiff,                )
                                    )
       vs.                          )
                                    )
MEDAIRE, INC.; STEVEN JOE REINHART, )
D.O.; and JESSICA MONAS, M.D.,      )
                                    )
          Defendants.               )
_____)



    VIDEO-RECORDED DEPOSITION OF ROBERT C. CANDIPAN, M.D.


                    Phoenix, Arizona
                    July 27, 2016
                      9:32 a.m.






REPORTED BY:
STEPHANIE WINTERS, RPR
Certified Reporter, No. 50067

1    Gallagher & Kennedy representing MedAire, Inc. and Drs.

2    Steven Reinhart and Jessica Monas.

3           THE VIDEOGRAPHER:  Thank you, Counsel.  The court

4    reporter may swear in the witness at this time, please.

5

6                    ROBERT C. CANDIPAN, M.D.,

7    called as a witness herein, having been first duly

8    sworn, was examined and testified as follows:

9

10                   E X A M I N A T I O N

11   BY MR. DANGERFIELD:

12        Q.   Good morning, Doctor.

13        A.   Good morning.

14        Q.   What did you do to prepare for your deposition

15   this morning?

16        A.   I reread some of the materials that I was given,

17   testimonies of Dr. Reinhart, Dr. Monas, re-reviewed the

18   expert witness report that I prepared, as well as the

19   rebuttal to expert witnesses.  I reread the expert witness

20   reports of Dr. Roth and Dr. Budoff, and the rebuttal that

21   they provided as well.

22           In addition, I met with Mr. Spragg to go over some

23   points about giving depositions and those types of matters.

24        Q.   And when did you meet with Mr. Spragg?

25        A.   I did meet with him yesterday evening -- or

1     A.    No.

2     Q.    You don't hold yourself out as an expert in

3   emergency medicine, do you?

4     A.    No.

5     Q.    And beyond some general training in medical

6   school, I take it you've never been specially trained in

7   emergency medicine?

8     A.    No.

9     Q.    And you've never practiced as an emergency

10   physician?

11    A.    Years ago while in training, I moonlighted in

12   urgent care.  So that is somewhat of an emergency medicine

13   specialty, but not since then.  So that would have been over

14   20 years ago.

15    Q.    Okay.  That was for a short period of time?

16    A.    A short period of time.

17    Q.    Okay.  And Doctor, you don't claim to be an expert

18   in giving remote medical advice to airlines, do you?

19    A.    No.

20    Q.    And you've never been employed to give remote

21   medical advice to airlines, have you?

22    A.    No.

23    Q.    In your practice today, do you ever have occasion

24   to give remote medical advice to patients?

25    A.    Yes.

 1    that's unusual -- when you use that language, you're giving

 2    an opinion that the MedLink physicians fell below the

 3    medical standard of care in what they did?

 4              MR. SPRAGG:  Objection.  You can answer.

 5              THE WITNESS:  I would say that in my opinion, when

 6    I qualify something as an unusual or unexpected event, I

 7    would say that what I would consider the expected response

 8    or what would typically happen, that it was not met.

 9    BY MR. DANGERFIELD:

10       Q.    Well, can we agree that you have no background or

11    basis for assessing what typically happens when an emergency

12    physician gives remote medical advice to an airline?

13              MR. SPRAGG:  Objection.

14              THE WITNESS:  I have no experience.

15    BY MR. DANGERFIELD:

16       Q.    Okay.  So to put it plainly, you don't -- you

17    can't say what typically happens when a MedLink physician

18    gives remote medical advice to an airline, correct?

19       A.    No, I do not -- or cannot.

20       Q.    So when you say "unusual or unexpected," you're

21    not talking about what's unusual or unexpected in terms of a

22    physician giving remote medical advice to an airline,

23    correct?

24              MR. SPRAGG:  Objection.  Foundation.

25

1    BY MR. DANGERFIELD:

2        Q.    Because you have no experience in that?

3              MR. SPRAGG:   Same.

4              THE WITNESS:   Correct.

5    BY MR. DANGERFIELD:

6        Q.    But if I understand you, what you're saying is

7    that you as a cardiologist would have expected the doctors

8    to have done something different?

9        A.    That's correct.

10       Q.    So it's based on what you view as the standards

11   you would have employed in their position?

12       A.    It's what I would view as the standards that I see

13   most emergency room physicians employ.

14       Q.    But you're not an emergency room physician.   We

15   have already agreed to that?

16       A.    That's correct.

17       Q.    And you don't claim to be an expert in that,

18   right?

19       A.    I do not claim to be an expert.

20       Q.    So to the extent you're basing your unusual and

21   unexpected on anything you've participated in, it's based on

22   what you've seen -- well, let me start that over.

23             MR. SPRAGG:   Objection.   Form.

24             MR. DANGERFIELD:   That's why I'm starting it

25   over.